# LAMOILLE COUNTY.

## AUGUST TERM, 1839.

PRESENT, HON. STEPHEN ROYCE,
" JACOB COLLAMER,
" ISAAC F. REDFIELD, } *Assistant Justices.*
" MILO L. BENNETT.

---

### ABIGAIL CHURCHILL *v.* STILLMAN CHURCHILL.

The refusal of an officer to take bail on *mesne process* does not render him a *trespasser*.

An officer, in serving a process agreeably to its precept, is not guilty of trespass, unless it is apparent, *upon the process*, that the authority issuing it had not jurisdiction.

The relationship to a party which disqualifies a *juror* is the same which disqualifies a judge or justice.

That relationship is affinity or consanguinity within the fourth degree, reckoned according to the *civil*, not the canon law.

THIS action was trespass for assault and battery, and false imprisonment. Plea, that the defendant, as deputy sheriff, had for service a writ signed by a justice, declaring in debt on judgment, commanding the taking of property or body of said Abigail, and that he, for want of property, took the plaintiff's body and her committed to jail, &c. The plaintiff, in her replication, new assigns ; First, that the plaintiff turned out and delivered to the defendant sufficient personal property, which he took on said writ. Second, that she offered the defendant good and sufficient bail, which he refused to take.

LAMOILLE,
August,
1839.

Churchill
v.
Churchill.

Third, that the defendant, in arresting the plaintiff and carrying her to jail, used unnecessary and unreasonable force and violence. The defendant, in his rejoinder, insisted that he was not guilty, as the plaintiff had new assigned.

On trial the plaintiff proved that on or about the 1st day of June, 1835, the defendant arrested her at Waterbury, upon the process mentioned in his plea in bar, and committed her to jail at Montpelier. She also gave evidence tending to show, that she had previously turned out to the defendant, to be attached upon said writ, a side-saddle and a table, and that the defendant, until the time in question, had forborne to arrest her person, by reason of her having turned out said property upon said writ. The defendant gave evidence tending to prove that said property was not, nor was intended to be, attached on said writ, but was turned out in settlement of the suit, provided the creditor would accept it in satisfaction, and that the creditor had refused to accept it. The plaintiff introduced evidence tending to prove, that the defendant conducted towards her, on the occasion of said arrest, with unreasonable severity and violence. The testimony on the part of the defendant tended to prove that he used no more force or severity than was necessary to execute his process.

Lyman Beebe, a witness for the plaintiff, testified, among other things, that he was a son-in-law of plaintiff, and had started to remove her from Elmore in this state to the western country, and had proceeded with her on said journey as far as Waterbury, when defendant overtook them with said writ; that the witness enquired of the defendant if he would take bail, to which he replied that he would not then, as he should thereby lose a part of his fees.

Heman Sherman, another witness for the plaintiff, testified that he heard Beebe ask the defendant if it was bailable ; and that the defendant replied that it was, but he should not take bail then, but should have taken it if offered before he started in pursuit of plaintiff. This testimony was not contradicted by any witness.

Upon this part of the case the court instructed the jury, that it was not sufficient in support of the plaintiff's replication, merely to prove that the defendant declared that he would not take bail. It was necessary to prove that the plain-

tiff offered Beebe to the defendant as her bail, or that Beebe offered to become her bail.

The existence of the defendant's process, as described in his plea in bar, was mutually treated as confessed by the replication ; therefore no other proof or evidence, touching said process, was put into the case; and, in reference to the statute of November 6th A. D. 1834, exempting females from imprisonment for debt, which had been adverted to by the plaintiff's counsel, the court instructed the jury that they were at liberty to presume, that the cause of action on which said process was founded, originated before the 1st day of January, 1835, and therefore said statute was not applicable to the case on trial. Verdict for the defendant ; and to the charge of the court in the above mentioned particulars the plaintiff excepted.

After verdict the plaintiff interposed a motion that judgment be rendered for the plaintiff notwithstanding the verdict, which was overruled by the court. The plaintiff also made a motion for a new trial on the ground that the wife of one of the jurors was cousin to the defendant's father, and this not known to the plaintiff until after verdict. This motion was also overruled by the court, though such relationship was found to exist. To both which decisions the plaintiff excepted.

*Willard & Poland and W. P. Briggs,* for plaintiff.

I. Did the county court err in instructing the jury, that the allegation in plaintiff's replication, viz. " That she offered and tendered good and sufficient bail, to wit, one Lyman Beebe, was not proved by the testimony of said Beebe and Heman Sherman ?

However necessary it might be for the plaintiff to have offered or tendered some person as her bail, or procured some person to offer or tender himself as bail to the officer, in case the officer had said nothing upon the subject, we contend, that, in a case like the one at bar, where the officer explicitly and repeatedly made known his determination, not to take any person as bail, if offered, it is clearly a waiver, on his part, of any such offer or tender on the part of the plaintiff.

If the offer, that was made by the plaintiff or Beebe, and the refusal of the defendant to accept bail at all, amounted

to a sufficient offer of bail, then the defendant, by afterwards proceeding to carry her to prison, was guilty of an abuse of authority given him by law, and thereby became a trespasser *ab initio.* See 1st Statute of Vermont, page 66. 2 Saund. Pl. & Ev. 382 & 383, and authorities there cited. 1 Swift's Dig. 516 & 517.

II. Were the jury rightly instructed, that they ought, in the absence of any proof whatever, to presume that the cause of action, on which the process, mentioned in defendant's plea in bar, issued, originated prior to January 1st, 1835 ?

The bill of exceptions states, that the existence of defendant's process, as described in his plea in bar, was mutually treated as confessed by the replication. But this cannot avail the defendant, for the cause of action, on which said process was founded, is not described in the plea, as having originated before January 1st, 1835.

III. The third question arises upon the motion of the plaintiff to have judgment entered in her favor, notwithstanding the verdict for the defendant.

This motion presents several distinct points for examination, viz :

1. By pleading in confession and avoidance, the defendant admitted the committing of the trespasses alleged in the declaration, and unless the matters, set forth in the plea in bar, amount to a sufficient and legal justification, the plaintiff is entitled to recover upon the defendant's confession.

If the defendant's plea in bar was defective in substance, so that it would have been bad upon general demurrer, it did not amount to a sufficient justification. Stephens' Pl. 128 & 129.

2. Was the defendant's plea in bar defective in *substance,* so that it would not have stood the test of a general demurrer ?

It does not appear, from the plea, whether the cause of action (viz. said judgment) originated before, or after the 1st of January 1835, and, of course, it does not appear by the plea, whether defendant had any right to arrest the plaintiff by virtue of that process.

It was necessary for the defendant to show, in his plea, every thing which was necessary to make his justification a legal and sufficient one. As he has omitted a necessary allegation, the plea is of course bad, unless aided by some subse-

quent proceeding. It is also an established rule that every intendment is to be made against the party pleading. Stephens' Pl. 421. 1 Chitty's Pl. 463.

3. Was the defendant's plea aided by the plaintiff's replying over, instead of demurring, so that the plaintiff is not now at liberty to object to it.

The doctrine of the books seems to be, that a plea which which is defective in form merely, but sufficient in substance, is aided by the plaintiff's replying over, but that a plea defective in substance is not so aided. 1 Chitty's Pl. 482. Stephens' Pl. 178, 179. 5 Comyn's Digest, 377, 421. 3 Cowen's R. 96, cited in 2d N. Y. Digest, 155.

4. Was the defect in the plea in bar cured by the verdict for the defendant? The only cases where defects of substance are cured by verdict, are those where the fact, which is not alleged in the plea, must have been proved to have enabled the party to have a verdict in his favor. In this case the pleadings show that the question of the date of said judgment was not put in issue by the pleadings. And the exceptions show that no proof was introduced upon that point, before the jury. Of course it cannot be remedied upon the supposition that the fact was found in favor of the defendant by the jury. 1 Chitty's Pl. 359. Stephens' Pl. 180. 1 Saunders' R. 228, note 1.

5. This motion is founded on the record alone, and does not depend upon the state of the evidence at the trial. *Snow v. Conant,* 8 Vt. R. 309. Stephens' Pl. 128, 129. 1 N. Y. Digest, 689.

IV. The fourth question is upon the plaintiff's motion for a new trial. This motion is founded upon the relationship existing between one of the jurors and the defendant.

Under this motion the plaintiff contends,

1. That, by the law in this state, as adopted from the common law, the defendant and the juror were related in the third degree. 2 Chitty's Blackstone, 206.

2. That by the common law, jurors related to either party within the ninth degree are incompetent, and that the relationship is a principal cause of challenge. 3 Chitty's Blackstone, 363. 1 Swift's Digest, 738.

*P. Dillingham* and *O. Butler,* for defendant.

LAMOILLE,
*August*,
1839.
———
Churchill
*v.*
Churchill.

The opinion of the court was delivered by

COLLAMER, J.—The jury, by their verdict for the defendant, must have found there had been no property taken and no unnecessary force used by him. In relation to bail having been refused, it appears there was some testimony tending to show he said he should take no bail, but there was no proof that any was offered him. The decision of the court, that this was insufficient, seems entirely reasonable; but it was of no importance, as refusing bail would not have rendered the defendant a trespasser. It would have been a *nonfeasance*, not a malfeasance rendering the officer a trespasser *ab initio*. Nothing but *case* could be sustained. 2 Saund. R. 61, note 5. 1 Chitty's Plead. 137, 186.

An officer is always protected when he serves a process, issuing from competent authority, or more properly, when from the face of the precept the officer cannot perceive a want of jurisdiction. In this case the officer served a writ issuing from a court having jurisdiction generally to issue such process, and this appears by the plea. If the plaintiff would have either a verdict or a judgment against the defendant, as a trespasser, she must show that, in this instance, the court had not such authority, and that this was apparent upon the precept. This was neither pleaded nor proved by her.

A man is, by affinity, related to all the *consanguinei* of his wife. The juror's wife's father was cousin to the defendant; so the juror was, by affinity, second cousin to the defendant. That this degree of relationship would have disqualified the juror or been good ground of challenge in England is quite clear. But having the blood of a common ancestor, or the clan of relationship, is hardly of as much regard or importance here as under the feudal system, or in an early and imperfect government; and the excluding of relations to the ninth degree, reckoned even according to the canon law, would be, here, greatly inconvenient. This, however, as a part of the common law, we are bound to follow, unless we find some clear indication of the legislative will to the contrary. By our statute, judges of the courts within the *fourth degree* of affinity or consanguinity to either of the parties are disqualified. (Stat. vol. 1, page 117.) Justices of the peace are disqualified only within the fourth degree. It

seems unreasonable to hold that a juror, who is but a branch of the court, should be excluded for that which would not affect the court, judge or justice.   We consider that the legislature have, in effect, said that the relationship only, which is to be regarded in our courts, is a relationship within the fourth degree.   The next question is, how are these *degrees* to be reckoned ?  By the canon law, which is the English law of descent, men were considered as near related to each other as they were to their common ancestor, and, therefore, the number of degrees, the most distant from the common ancestor, was their degree of relationship.   This canon the Romish church had much interest in preserving, as it increased the circle of matrimonial prohibition and brought revenue for dispensations.   By this rule this juror was, by affinity, related to the party within the third degree, as from the grandfather of the juror's wife, the common ancestor, to his son, the grandfather of the defendant is *one degree ;* to the defendant's father is *two degrees,* and to the defendant, the most distant from the common ancestor, is three degrees.   But, in settling the degree of relationship, in this state, we must be guided by our law of descent.   Our state, in common with most of the sister states, early discarded the feudal canon of descent, not only its primogeniture, but its canon of computing the degrees of relationship.   The statute of Charles II, commonly called the statute of distribution, has been copied almost literally, in this state, not only as the rule of distribution of personal property, but as the rule of descent in real estate.   In adopting that statute, we adopted the construction it had received, which was, that in computing degrees of relationship, in ascertaining the next of kin, it should be done by the rule of the *civil law,* and the half blood be included.   By this law two men are considered related to each other only in that number of degrees which exists between them, to be counted by reckoning from one up to their common ancestor, and then down to the other.   Reckoned in this manner, the juror was, by affinity, related to the defendant only in the *fifth* degree, and, therefore, not disqualified to try the cause either as judge or juror.

Judgment affirmed.