SUMMERS, Justice.
Lawrence Mitchell purchased a refrigerator, range, stereo and washer from W. T. Grant Company on an installment sales contract. When Mitchell defaulted in his payments, Grant instituted this suit in the First City Court of New Orleans for $574.-19, the balance due on the contract.
Grant alleged its entitlement to “a vendor’s lien and privilege” on the merchandise and that it “fears that said defendant will encumber or alienate same during the pendency of the proceeding . . . .” Accordingly, Grant alleged, the issuance of a writ of sequestration was necessary to protect its interest. La. Code Civ.P. arts. 3501, 3571.
In an attached affidavit Jerry Dunnegan, Grant’s Credit Manager, verified the facts *632 of the petition and affirmed that petitioner “has reason to fear and believe that the said defendant, Lawrence Mitchell, will encumber, alienate or otherwise dispose of the merchandise . . . during the pend-ency of these proceedings, and that a writ of sequestration is necessary . . . La.Code Civ.P. art. 3501.
The Judge of the City Court signed an order for the issuance of a writ of sequestration upon plaintiff furnishing bond in the amount of $1,125. La.Code Civ.P. art. 3574. On the same day bond was furnished, February 2, 1972, the writ of sequestration issued, and Mitchell was cited to answer within five days. On February 7, 1972 Mitchell’s stove, refrigerator and electric wash tub were provisionally seized pursuant to the writ of sequestration.
Thereafter, on March 3, 1972, Mitchell’s counsel filed a motion to dissolve the writ of sequestration, alleging that the refrigerator, stove and electric wash tub were exempt from seizure by any process whatsoever under Section 3881 of Title 13 of the Revised Statutes. The motion to dissolve was also based upon the assertion: that Mitchell was denied due process of law in that he received no notice prior to the provisional seizure under the writ. of. sequestration nor was he afforded an opportunity to defend his rights to the personal property prior to the seizure. MitchelL also alleged his poverty and want of means'- and sought to proceed in forma pauperis as-authorized by Article 5181. of the Code of.' Civil Procedure.
Mitchell’s motion to dissolve and' the-application to proceed in forma pauperiswere denied by the judge a quo, and' a subsequent application for review to the Court: of Appeal, Fourth Circuit was also denied:. We granted review on Mitchell’s application.
I.
Section 3881 of Title 13 of the Revised'. Statutes exempts from seizure the stove,..' wash tub and refrigerator “under any writ, mandate, or process whatsoever”.[1] This-section was added to the Revised Statutes by Act 32 of 1960 to replace Article 644 of the Code of Practice [2] when the latter was. *634 repealed, having been superseded by the Code of Civil Procedure. See Act 15 of 1960.
After its inclusion in the Revised Statutes, Section 3881 was amended in 1961 to remove all doubt that the wages, salaries, and other compensation of public employees and contractors were subject to garnishment. The second reason was to effectuate the recommendation of the Louisiana Sheriff’s Association that the refrigerator used in a debtor’s household be exempted from seizure. Act 25 of 1961; Comments by Henry G. McMahon to Section 3881. In all other respects the subject matter of Article 644 of the Code of Practice was unchanged by Section 3881.
This conclusion is further confirmed by the inclusion of Section 3881 in Chapter 18 of Title 13 of the Revised Statutes dealing with seizures in general. This chapter also contains enactments pertaining to execution of judgments under a writ.of fieri facias; whereas a separate chapter (Chapter 20) in the same title collects the sections pertaining to provisional remedies (attachment, sequestration, etc.). If the compilers of the Revised Statutes, and the Legislature, intended that the exemptions of Section 3881 should apply to provisional remedies, it would have been more orderly and logical to include this section with the sections on that subject. Instead this exemption provision was included with those sections pertaining to seizures under fieri facias.
Article 644 of the Code of Practice was contained in Chapter 6, “Of The Proceedings in Execution of Judgments.” Section 3 of that chapter dealt with “The Execution of Judgments Directing the Payment of a Sum of Money.” Paragraph 1 of Section 3 pertained to the Writ of Fieri Facias. Article 644 falls under this heading. It is for this reason that the courts have held that Article 644 related to exemptions from seizure under the writ of fieri facias only, refusing to allow the exemption against a provisional seizure to assert a lessor’s privilege. Ross v. Rosenthal, 1 Orleans App. 203 (1904), cert. denied by Supreme Court June 30, 1904; Benton v. Jarrett, No. 2136 on the Docket of the Court of Appeal, Parish of Orleans, cert. *636 denied. In Stewart v. Lacoume, 30 La. Ann. 157 (1878), commenting- upon the effect of Article 644, this court said: “It is evident that the exemptions of property from seizure provided for by Art. 644 C.P. and by the Acts of 1872 and 1874, do not apply in favor of the lessees as against their lessors.”
These results were based upon the proposition that the lessor’s privilege established by Article 2705 of the Civil Code was not on the same subject matter as the exemptions of Article 644 “and the Code of Practice was framed exclusively with a view to judicial proceedings, and its provisions on the subject of general laws do not necessarily repeal those of the Civil Code that are contrary to, or inconsistent with them.” Ellis v. Prevost, 13 La. 230 (1839). See also Kay v. Furlow, 178 La. 635, 152 So. 315 (1934); Kyle v. Sigur, 121 La. 888, 46 So. 910 (1908); Ross v. Rosenthal, 1 Orleans App. 203 (1904). In essence, the conclusion has been that exemptions from seizure under fieri facias were inapplicable to provisional remedies to assert privileges created by the Civil Code. On this basis we hold that the exemptions allowed by Section 3881 cannot be allowed against a provisional seizure by writ of sequestration to preserve a vendor’s privilege.
II.
Article 3217 of the Civil Code announces that “The debts which are privileged on certain movables, are the following: . . . The price due on movable effects, if they are yet in the possession of the purchaser
Article 3227 elaborates:
He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale is made on a credit or without, if the property still remains in the possession of the purchaser . . .
The vendor’s privilege on movables exist against the property sold as a substantive right incident to the contract of sale. Johnson v. Bloodworth, 12 La.Ann. 699 (1857); State ex rel. Landry v. Broussard, 177 So. 403 (La.App.1937).
The privilege has been an integral part of the law of Louisiana since the adoption of the State’s first code in 1808.[3] Its practical importance has diminished somewhat since adoption of the Chattel Mortgage Act, the latter having been enacted principally to supply the commercial deficiency of the vendor’s privilege, which in general does not follow the movable when it leaves the vendee’s possession. Nevertheless, the ven *638 dor’s privilege remains an important and valuable right in commerce. The formality, time and expense involved in executing and recording chattel mortgages often prevent their use, particularly on small, inexpensive chattels or where the vendor neglects or is prevented from using the chattel mortgage. Daggett, Louisiana Privileges and Chattel Mortgages, p. 91 (1942); Margolin, Vendor’s Privilege, 4 Tul.L.Rev. 237 (1929).
As understood in our law, the vendor’s privilege does not exist at common law. It is distinguished from the common law vendor’s lien, which the vendor loses when he delivers possession of the article sold to the vendee. Daggett, Id.
The privilege exists upon the sound equitable principle that when the purchaser acquires the vendor’s property, his estate is enriched. “It would indeed be unjust to place an unpaid vendor on a footing of equality with other creditors of the purchaser ... It would be iniquitous to permit the property sold to become the prey of the creditors of the purchaser without requiring, as a condition precedent, the payment of its cost . . . .” De L’Isle v. Succ. of Moss, 34 La.Ann. 164 (1882).
As defined by Laurent, Vol. XXX, p. 6, §2; p. 18, § 16, the raison d’etre of the vendor’s privilege is the enrichment of the purchaser’s estate by the acquisition of the vendor’s property. The right to the payment of the price has, therefore, always commended itself to the favorable consideration of courts.
Planiol gives this justification of the privilege:
As long as the price is not paid the sale augments the patrimony of the buyer at the expense of the vendor; the latter has impoverished himself, he has alienated his property and has not received anything in exchange. The vendor has thus gratuitously augmented the common pledge of the creditors of the buyer; the latter can be paid with the property sold without the vendor being paid, they enrich themselves at his expense, which is unjust .... (Planiol, Vol. 2, No. 2608)
The privilege alone as defined by the Civil Code is of limited value. It is essentially a right without a remedy for its implementation. The machinery for its enforcement and protection is found in our procedural law. Louisiana has long recognized a need for several types of seizure before judgment. Today two are allowed: attachment and sequestration. Attachment is based upon some act, or anticipated act, of the debtor which would place the creditor at a disadvantage in the suit and which prompts the law to protect the creditor by permitting him to seize the debtor’s property pending the suit, even though the creditor has no claim against the thing seized. Sequestration involves no intent on the part of the debtor to defraud, but it is founded *640 upon a claim to the ownership or possession or a privilege on the property seized. La.Code Civ.P. Book VII, Special Proceedings, Title I, Provisional Remedies, Chapter 1, Attachment and Sequestration, Preliminary Statement.
Sequestration issues only when the grounds clearly appear by affidavit, and security is required for the payment of damages for wrongful issuance of the writ. La.Code Civ.P. 3501. It issues on the claim of ownership, right of possession or a mortgage, lien or privilege if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish during the pendency of the action. Id. art. 3571. In certain instances the court may on its own motion order the sequestration of property where the ownership is in dispute. Id. art. 3572. The seizure must not be excessive, id. art. 3505, and the defendant may by contradictory motion obtain its dissolution unless plaintiff proves the grounds. Or defendant may obtain the release of the property upon furnishing security. Id. art. 3507. Sequestration has only the effect of preserving the property pending judgment. Id. 3510. Plaintiff’s security is not released until a final judgment is rendered in his favor. Id. art. 3512.
Against this background we consider Mitchell’s due process contention. It is based upon the argument that to satisfy the requirements of due process defendant is entitled to prior notice and prior hearing before seizure. The contention is principally based upon the recent decision of the United States Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and its companion case. There appellants were purchasers of household goods under conditional sales contracts. They challanged the prejudgment replevin provisions of the Florida and Pennsylvania law.
The Court declared these statutes worked a deprivation of property without due process of law insofar as they denied the right to a prior opportunity to be heard before chattels are taken from their possessor. However, in its reasons the Court said, “There may be cases in which a creditor could make a showing of immediate danger that a debtor will destroy or conceal disputed goods.”
This clearly announced exception to the ruling, we feel, exists in the instant case. Aside from the quoted allegations of the petition and averments of attached affidavits, there is the irrefutable inference that the vendee has, by the act of buying itself, consented to the preservation of the vendor’s privilege.
A purchaser can only be excused from the effects of the vendor’s privilege by saying he was ignorant of its implications. To sanction such an excuse violates the most fundamental of all legal principles and *642 negates law at its source. It is only one step from the conclusion that the purchaser is presumed to know the law to say that when the purchaser acquires property subject to the vendor’s privilege, he is held to be cognizant of the remedies such a privilege affords to the vendor and the ancillary obligations of the purchaser. One of these remedies is the right to sequestration where the purchaser has defaulted in ■his payments.
Under Louisiana law, therefore, the purchaser’s possession is precarious to this extent: He holds possession with the implied-in-law knowledge that he has acquired the right to possession, subject to the vendor’s paramount right to seize the property without hearing should he default in his payments. This seizure, the law ordains, must be with security in favor of the debtor and can only continue until a final adjudication of the rights of the parties. In effect, when the purchaser acquires movables he consents to the privilege and its enforcement provisionally.
The vendor’s privilege differs from the common law conditional sale in that, in the conditional sale, the vendor retains title, and he does not lose his right to recover the property after it leaves the possession of the vendee. It is different with the vendor’s privilege. The vendor’s privilege is lost when the vendee divests himself of possession. The prejudgment seizure is the only effective device which will preserve the vendor’s rights against a'reluctant debtor, pending the protracted delay incident to obtaining judgment. Sequestration is simply a device to which the parties to the sale have, in effect, agreed whereby the property may be preserved for the mutual benefit of the parties pending a determination of their rights.
The law of vendor’s privilege in this state operates to favor the vendor and the vendee alike. The long history of vendor’s privilege in Louisiana demonstrates that it enables the purchaser to acquire property he may otherwise be unable to buy as much as it induces the vendor to sell. Without the benefits accorded the vendor, it may well be concluded that in a substantial number of instances the possession and title to property would not be surrendered to prospective purchasers. Because of it, many impecunious citizens are enabled to acquire property to foster their livelihood and provide for their sustenance.
We can discern no violation of due process rights when the purchaser is fully informed by law of the" remedies which may be invoked as an incident of the sale.
III.
Finally, Mitchell complains that he has not been permitted to proceed in forma pauperis. He maintains he is indigent and entitled to the privilege of litigating with *644 out the prior payment of costs (La.Code Civ.P. art. 5181), because, according to his brief, he earns only $70 per week. He maintains this low income, coupled with the need to support a wife and three children, creates such a hardship that he cannot afford to pay the costs.
There is no record evidence to support the claim other than the general statements in his affidavits accompanying the motion to dissolve to the effect that he is unable to pay costs because of his poverty. This is not sufficient to overcome the presumption of correctness attaching to the judge’s order which denied Mitchell the right to proceed in forma pauperis. Nevertheless, since we are remanding this case to be proceeded with on its merits, we shall afford Mitchell an opportunity to make up a proper record on this forma pauperis issue.
For the reasons assigned, the ruling of the trial judge rejecting the motion to dissolve the writ of sequestration is affrimed, and the case is remanded to the trial court for further proceedings in accordance with law and the views herein expressed. The assessment of costs is to await the final outcome of the case.
DIXON, J., concurs in the result, but is of the opinion that Young v. Geter, 185 La. 709, 170 So. 240, is contra and should be overruled. Young v. Geter gives too narrow a. construction to Article 1, Section 11 of the Louisiana Constitution.
BARHAM, J., dissents for reasons assigned by TATE, J.
TATE, J., dissents and assigns written reasons.

. La.R.S. 13:3881:
"The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever:
♦1- tjc íjt ^
“(4) The clothing, bed, bedding, bedstead, linen, china, glasses, knives, forks, spoons, dining table and chairs, cooking stove, kitchen utensils, pressing irons, washtubs, and refrigerator (electric or otherwise) used by him or a member of his family; the family portraits; his arms and military accoutrements; the musical instruments played or practiced on by him or a member of his family;, and the poultry and fowl kept by him for the use of his family.”

. La.Code of Practice, art. 644:
“The sheriff or constable can not seize the linen and clothes belonging to the debtor or his wife, nor his bed, bedding or bedstead, nor those of his family, nor *634 his arms and military accoutrements, nor the tools and instruments and books and sewing machines, necessary for the exercise of his or her calling, trade or profession by which he or she makes a living; nor shall he, in any case, seize the rights of personal servitude, of use and habitation, of usufruct to the estate of a minor child, nor the income of dotal property, . . . nor the cooking stove, and utensils of said stove, nor the plates, dishes, knives and forks, and spoons, nor the dining table and dining chairs, nor washtub, nor smoothing irons and ironing furnaces, nor family portraits belonging to the debtor, nor the musical instruments played on or practiced on by any member of the family, nor any poultry or fowls belonging to the debtor for family use.”
*****

. La.Code of 1808, (Digest of Civil Laws Now in Force in the Territory of Orleans with Alterations and Amendments Adopted to its Present System of Government.) Bk. 8, Tit. 19, Arts. 74, subdiv. 5, and 75, subdiv. 1.