**Dorothy A. FLEMING, Plaintiff-Appellant,**

v.

**Evelyn McENANY et al., Defendants-Appellees.**

**No. 38, Docket 72-2350.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1973.

Decided Jan. 8, 1974.

------

William M. McCarty, Jr., Brattleboro, Vt. (J. Morris Clark, Burlington, Vt., on the brief), for plaintiff-appellant.

Robinson E. Keyes, Rutland, Vt. (James T. Haugh and Ryan, Smith & Carbine, Rutland, Vt., on the brief), for defendant-appellee John G. Kissane.

John P. Maley, Burlington, Vt. (James M. Farrell and McNamara, Fitzpatrick, Sylvester, Farrell & Maley, Burlington, Vt., on the brief), for defendants-appellees Wesley Lagrow and Roland Keenan.

Before KAUFMAN, Chief Judge, LUMBARD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal arises from another Vermont saga: a woman, in need of help to repair a flat tire, obtained such help from two male acquaintances whom she met in a bar; they in turn accompanied her on a full day of drinking at various bars; and toward evening, many miles from where they started, she drove her car through a store front. Following her arrest and eventual release on a state criminal charge and later on a state civil body attachment, she brought a diversity action in the federal district court seeking damages for false imprisonment from those who caused her civil arrest and confinement.

The issue before us is the propriety of the district court's granting defendants' motions for directed verdicts at the close of plaintiff's case. At the outset, we emphasize that this is *not* an action to recover damages for alleged violation of plaintiff's civil rights under 42 U.S.C. § 1983 (1970). It is a diversity action for false imprisonment in which we are required to apply, as did the district court below, the law of Vermont which has been well settled for more than a century. We affirm.

I.

The facts are simple, straightforward —and sad.

Plaintiff Dorothy A. Fleming, a 51 year old woman who was a resident and citizen of Massachusetts, was visiting her mother in Jericho, Vermont, in July 1969. Early in the morning of July 10, she had a car with a flat tire in Essex Junction. She went to a bar where, about 9 A.M., she met two male acquaintances who changed her tire. At their request, she drove them to Burlington where they visited various taverns. Later that day, she and her two acquaintances drove to St. Albans, stopping "every little while on the turnpike" for another drink. Upon arriving in St. Albans at about 6 P.M., plaintiff was "rip-roaring drunk". In attempting to park her car, she knocked down a parking meter, hit a couple of other cars and ran her car into a store front owned by defendant Evelyn McEnany. She was arrested and confined in jail on a criminal charge arising from the accident.

On the following day, July 11, she pled guilty to the criminal charge and was fined $105 or, in the alternative, sentenced to 105 days in jail. Unable at first to pay the fine, she remained in jail pursuant to the criminal sentence for approximately one week, at the end of which she paid the criminal fine.

In the meanwhile, on July 11, she was served with a civil capias writ [1] and a complaint seeking $2,000 for damage to the store front. Unable to post sufficient property to satisfy the $2,000 bail fixed by a magistrate pursuant to the capias, she was committed to the Franklin County Jail where she remained for a period of 20 days until her insurance company entered an appearance on her behalf on July 31 and arranged for her release.[2]

Based on this sequence of events, plaintiff commenced a diversity action in the District Court for the District of Vermont on March 4, 1970 to recover $50,000 for false imprisonment. Her false imprisonment complaint named as defendants Evelyn McEnany, the owner of the store front who previously had sued her for damages in a Vermont state district court; [3] John G. Kissane, Esq., the attorney for Miss McEnany who had instituted the state court action against plaintiff; Wesley Lagrow, the deputy sheriff who arrested plaintiff pursuant to the capias; and Roland Keenan, the sheriff and jail keeper in whose custody plaintiff remained while confined. All defendants are citizens of Vermont.

At the close of plaintiff's case, Chief Judge Holden on October 16, 1972 denied her motion for a directed verdict and granted the motions for directed verdicts by each of the four defendants. This appeal is from the judgment entered upon the directed verdicts in favor of defendants.

On appeal plaintiff asserts alternative theories of liability on the part of defendants. She contends first that defendants are liable to her for damages under the Vermont law of false imprisonment because the Vermont procedure, which authorized issuance of the capias pursuant to which she was arrested and confined, violated the due process clause of the Fourteenth Amendment, as that clause has been interpreted in Sniadach v. Family Finance Corp., 395 U.S. 337 (1969), since the Vermont procedure did not provide for a judicial hearing prior to arrest. Alternatively, plaintiff contends that defendants are liable to her in tort because *Sniadach*, which held summary garnishment of wages to be unconstitutional, was decided by the Supreme Court one month before the issuance of the capias pursuant to which she was arrested and confined, and therefore defendants should have known that the capias they issued and executed was unconstitutional.

For the reasons below, we hold plaintiff's contentions to be without merit.

---

1. The process here involved has been referred to variously as a "civil body attachment", a "civil capias writ" and "mesne process". In the interest of brevity, we refer to it in this opinion as a "capias".

   The statutes pursuant to which plaintiff was arrested and confined, 12 V.S.A. §§ 655, 3521 et seq. (1959), had long been embedded in Vermont law. LaFlamme v. Milne, 127 Vt. 301, 302, 248 A.2d 692, 693 (1968), cert. denied, 395 U.S. 965 (1969). Under this procedure a person arrested pursuant to a capias cannot be committed to jail if he or some other person furnishes sufficient security to the arresting officer for the amount of the attachment and, unless he waives the right, before he has appeared before a magistrate for the purpose of applying for reduction of the attachment. Pending such a hearing, the arrested person may be committed to jail. 12 V.S.A. § 3573 (1959). See Thurston v. Leno, 124 Vt. 298, 204 A.2d 106 (1964). The procedure authorizing arrest pursuant to a capias was repealed effective March 29, 1972. Vermont Public Acts of 1971, No. 185 (Adj.Sess.) § 237.

2. Although plaintiff was confined to jail for 20 days, not all of that time was pursuant to the capias. As indicated above, the first week of her confinement was pursuant to her criminal arrest and the criminal sentence imposed.

3. The civil suit against plaintiff brought to recover $2000 for damage to the store front, and in which the capias was issued, was commenced in the Vermont District Court, City of St. Albans, County of Franklin. To avoid confusion with the instant diversity action brought by plaintiff in the United States District Court for the District of Vermont, we refer to the former as the "state court action" and to the latter as the "federal court action."

## II.

■■ Our function in reviewing the propriety of the directed verdicts below is to determine whether there were any facts, or facts from which inferences might be drawn, which should have been sent to the jury for its determination as to whether defendants were liable to plaintiff for false imprisonment under Vermont law. Stief v. Sexauer Manufacturing Co., 380 F.2d 453, 455 (2 Cir.), cert. denied, 389 U.S. 897 (1967). If the evidence was such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there could be but one conclusion as to the verdict that reasonable men could have reached, then direction of the verdicts was proper. See Simblest v. Maynard, 427 F.2d 1 (2 Cir. 1970).

With respect to defendant Lagrow (the deputy sheriff who arrested plaintiff) and defendant Keenan (the sheriff and jail keeper who had custody of her), there can be no doubt that verdicts were properly directed in their favor.

■■ Under Vermont law, sheriffs and their deputies are required to receive and execute all writs delivered to them, under penalty of fine, costs and damages, unless a writ is absolutely void on its face. 12 V.S.A. §§ 696, 697 (1973); Gross v. Gates, 109 Vt. 156, 194 A. 465 (1937); Goodell v. Tower, 77 Vt. 61, 58 A. 790 (1904); Stoddard v. Tarbell, 20 Vt. 321 (1848). An officer's inquiry as to the validity of the process to be served is limited to an examination of the instrument itself to determine that it is properly signed, properly directed and properly returnable. Stoddard v. Tarbell, *supra*; Churchill v. Churchill, 12 Vt. 661 (1839). In short, process which is not void on its face provides sufficient justification for the officer who serves or otherwise executes it.

In Williams v. Franzoni, 217 F.2d 533 (2 Cir. 1954), aff'g 120 F.Supp. 444 (D.Vt.1954), we affirmed an order dismissing before trial a complaint which sought to recover damages from a sheriff whose deputies had served an allegedly invalid capias. Appellant there was serving in the United States Armed Forces. He was arrested pursuant to a Vermont state court capias contrary to a federal statute which exempted servicemen from such process. He sued in the federal court, claiming that he was entitled to recover damages from the sheriff for false arrest and imprisonment. In affirming the district court's dismissal of the complaint, Judge Chase, writing for our Court, held:

"The Vermont law applicable to the situation here presented, as shown by the decision of its highest court, makes the liability of an officer serving mesne process by an arrest pursuant to the command of the precept when, as here, the process conforms in kind to that which the court has jurisdiction to issue depend on whether there is a defect discoverable by an examination of the process itself which makes it void." 217 F.2d at 534.

■ In the instant case, as in *Williams,* since the capias served on plaintiff constituted process which the state court had jurisdiction to issue and was valid on its face, her arrest and confinement pursuant to the writ's command provides no basis for imposition of liability on Lagrow and Keenan for false imprisonment. See Gage v. Barnes, 11 Vt. 195 (1839); Pierson v. Gale, 8 Vt. 509 (1836).

Plaintiff argues, however, that, even though the capias pursuant to which she was arrested and confined was legal in its formal details, there existed on its face something "which would fairly warn the server that it is defective". Williams v. Franzoni, *supra,* 120 F.Supp. at 445. Plaintiff contends that, if her arrest on mesne process was unconstitutional, then the capias served on her must be deemed under Vermont law to have been void on its face. Alternatively, she contends that Lagrow and Keenan had reason to know that the capias was void on its face because of the decision in Sniadach v. Family Finance

Corp., *supra*. We find no merit in these contentions of plaintiff.

■■ Since the Vermont state court whose process was issued had subject matter jurisdiction and jurisdiction over the parties and the capias was not defective in its formal requisites, the process cannot fairly be said to have been void on its face by reason of an allegedly unconstitutional underlying procedure which, at the time of service, had not been decided. In fact, on December 3, 1968, only seven months before plaintiff was arrested, the Vermont Supreme Court had held unanimously that the statutory procedure authorizing confinement on mesne process was constitutional. LaFlamme v. Milne, 127 Vt. 301, 248 A.2d 692 (1968) (Holden, C. J.), cert. denied, 395 U.S. 965 (1969). Furthermore, the rationale for the long established Vermont law that a capias which is valid on its face provides sufficient justification for the officer who serves it completely refutes plaintiff's arguments. As we recognized in Williams v. Franzoni, *supra*, 217 F.2d at 534, it is a basic precept of Vermont law that " '[p]erilous, indeed, would be the condition of officers, if they were bound to look beyond their process, and to ascertain whether there was not some extrinsic matter to render it void, before they could proceed to execute it with safety' ", quoting from Gage v. Barnes, *supra*, 11 Vt. at 196. See Pierson v. Gale, *supra*.

We hold that the district court properly directed verdicts in favor of defendants Lagrow and Keenan.[4]

### III.

■ With respect to defendant Kissane (the attorney who issued the capias) and defendant McEnany (his client on whose behalf the state court action was instituted), the propriety of the di-

rected verdicts in their favor rests on a different footing. In addition to the considerations discussed above in connection with plaintiff's false imprisonment claims against Lagrow and Keenan, an essential element of her claims against Kissane and McEnany was proof that they acted in bad faith. Plaintiff did not introduce a scintilla of evidence of bad faith on the part of the attorney or his client. Indeed the evidence was that they acted in good faith. We conclude that there was no basis in the evidence for holding Kissane and McEnany liable for false imprisonment.

Essentially plaintiff contends that she made out a case against Kissane and McEnany for false imprisonment because the statutory procedure pursuant to which she was arrested and confined was unconstitutional. She claims that the procedure was rendered unconstitutional by Sniadach v. Family Finance Corp., 395 U.S. 337 (1969), and was therefore void at the time of her arrest and confinement. She contends that under Vermont law imprisonment pursuant to unlawful process is tortious whether or not the person responsible knew or should have known that arrest and confinement pursuant thereto was unconstitutional. Our careful examination of Vermont law satisfies us that, even if the procedure pursuant to which plaintiff was arrested and confined was unconstitutional, Kissane and McEnany could not be held liable for false imprisonment on the basis of the record before us.

■ Although the legal defenses afforded lawyers and clients for the issuance of a defective capias are not as broad as those which protect state officers, plaintiff's theory that imprisonment pursuant to unlawful process is tortious whether or not the lawyer and his client who issued it knew or should

---

4. We reject plaintiff's contention that Lagrow and Keenan are not equally protected by Vermont law. The justification provided Vermont officers applies equally to Lagrow as deputy sheriff and to Keenan as sheriff and jail keeper. The fact that the capias was not void on its face immunizes both from liability to plaintiff for false imprisonment. Parker v. Roberts, 99 Vt. 219, 131 A. 21 (1925) ; Kidder v. Barker, 18 Vt. 434 (1846).

have known that the process was void finds no support in Vermont law. None of the cases relied upon by plaintiff supports her contention that confinement pursuant to unconstitutional process in itself constitutes false imprisonment. Rather, the cases relied upon where liability has been imposed involved defects in particular writs which were caused by failure to follow state law and which were discoverable on the face of the writ itself or by examining the subject matter of the complaint which accompanied the writ.

Thus, in Gibson v. Holmes, 78 Vt. 110, 62 A. 11 (1905), the Vermont Supreme Court held that, where an attorney and his client caused a defendant to be imprisoned on a capias in the wrong county, both were liable for false imprisonment for failure to comply with the requirement that a defendant must be imprisoned in the same county where the case is pending. In Parker v. Roberts, 99 Vt. 219, 131 A. 21 (1925), liability was imposed on a former plaintiff who had caused a defendant to be imprisoned pursuant to a civil claim which was held to sound in contract rather than in tort, thus rendering the writ void on its face. Similarly, in Tenney v. Harvey, 63 Vt. 520, 22 A. 659 (1891), and Morrill v. Thurston, 46 Vt. 732 (1872), liability was predicated upon the fact that the particular capias issued in each case did not comply with Vermont law.

The teaching of these cases is that under Vermont law, where lawyers and their clients have been held liable for false imprisonment on the basis of a defective capias, the defects existed in the individual capias which issued—not in the statutory procedure as a whole—and were discoverable on the face of the writ itself or from the subject matter of the accompanying complaint. So far as we have been able to ascertain, in every case which has resulted in a recovery for false imprisonment, absent some form of malice or bad faith, the attorney failed to act in accordance with Vermont law in issuing the capias and could readily have acted to avoid the invalidity.

Indeed, contrary to the argument urged upon us by plaintiff, decisions of the Vermont Supreme Court hold that, in the absence of bad faith, an attorney, and through him his client, will not be held liable where a capias valid under state law when issued subsequently becomes invalid. Thus, in McMullin v. Erwin, 69 Vt. 338, 38 A. 62 (1897), the court held that an attorney who acted in good faith for the benefit of his client and whose "purpose was lawful, to collect a debt by legal process", 69 Vt. at 342, 38 A. at 63, was not liable for false imprisonment where he issued a lawful capias which, after delivery to the sheriff, was altered and made illegal without the attorney's knowledge. Similarly, in Aldrich v. Weeks, 62 Vt. 89, 19 A. 115 (1889), the court held that where the writ was not defective when issued nor when the original arrest was made, and where the attorney and client acted in good faith, they could not be held liable for false imprisonment, although the writ became defective before the sheriff rearrested the plaintiff.

Plaintiff further contends that, even if under Vermont law Kissane and McEnany could not be held liable for false imprisonment although the statute pursuant to which she was arrested later was held to be unconstitutional, the court erred in directing verdicts against her because it ignored what she claims was bad faith on the part of Kissane and McEnany. She contends that their conduct amounted to bad faith as a matter of law because they ignored Sniadach v. Family Finance Corp., *supra*. If they had studied this decision, so her argument goes, they would have concluded that the Vermont statutory capias procedure was unconstitutional. We disagree.

In issuing the capias, Kissane relied on a recent decision of the Vermont Supreme Court. Only seven months earlier, as stated above, that court in LaFlamme v. Milne, *supra*, had held that the statutory procedure which authorized arrest and confinement on mesne process was constitutional. Moreover, the court emphasized that arrest on

mesne process "is deeply embedded in the common law" and was adopted "by statute in the early history of the State." 127 Vt. at 302, 248 A.2d at 693. We hold that Kissane, and through him his client McEnany, in relying on this recent decision of the Vermont Supreme Court, cannot be said to have acted in bad faith under Vermont law. As there was no evidence that Kissane was aware of the decision approximately one month earlier by the United States Supreme Court in *Sniadach*, we decline to hold that this constituted bad faith under Vermont law. Indeed, the relevance of Kissane's alleged lack of awareness of *Sniadach* upon the issue of his good faith is highly doubtful at best. At the time it was decided, *Sniadach* did not automatically invalidate the Vermont capias procedure. *Sniadach* involved a different statute in a different state. And of course during the ensuing years the full impact of its holding has been the subject of hotly contested litigation.[5]

We hold that the district court properly directed verdicts in favor of defendants Kissane and McEnany, as well as in favor of defendants Lagrow and Keenan.

Affirmed.

KAUFMAN, Chief Judge (dissenting in part):

The majority opinion neatly avoids examination of the constitutionality of Vermont's body attachment statute, repealed on March 29, 1972, by finding that, under Vermont law, all of the appellees were accorded a qualified privilege of good faith conduct in defense to a suit for false imprisonment. Although I appreciate the doctrine of judicial restraint which counsels against needless resolution of constitutional questions, I cannot subscribe to the alternative course chosen by the majority—an expansion of the applicability of the qualified privilege wholly without support in general principles of tort law, in policy considerations governing liability or, most importantly, in the law of Vermont.

The common law tort of false imprisonment ordinarily requires proof merely that the defendant acted intentionally, not that he was motivated by malice or bad faith. W. Prosser, Law of Torts (3d ed. 1964) at 61. Where, as in this case, the false imprisonment is the product of a false arrest, however, a substantial number of jurisdictions recognize a qualified privilege of good faith conduct for an arresting officer. F. Harper and F. James, The Law of Torts (1956) at 269–270. Vermont is one of these. Williams v. Franzoni, 217 F.2d 533 (2d Cir. 1954), and cases cited therein.

The policy behind this limitation of liability is sound. The Supreme Court, in holding the good faith privilege applicable to a § 1983 action based on an unconstitutional arrest, gave this rationale:

A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.

Pierson v. Ray, 386 U.S. 547, 555, 87 S. Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). In this case, both Lagrow and Keenan were under a statutory duty to enforce an apparently valid capias writ. I agree with the majority, therefore, that both properly were accorded a good faith privilege as a defense to Mrs. Fleming's claim of false imprisonment.

Similar considerations of public policy, however, do not apply to Kissane or McEnany. Neither Mrs. McEnany nor her attorney, Kissane, was under any statutory duty or obligation to seek or issue the capias writ eventuating in the imprisonment of Mrs. Fleming. Their course was wholly a discretionary one,

5. See, e. g., Fuentes v. Shevin, 407 U.S. 67 (1972); Lynch v. Household Finance Corp., 360 F.Supp. 720 (D.Conn.1973), on remand from Supreme Court, 405 U.S. 538 (1972);

Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2 Cir. 1973); Mitchell v. W. T. Grant Co., 263 La. 627, 269 So.2d 186 (1972), cert. granted, 411 U.S. 981 (1973).

guided inevitably by an adversary's desire for victory with its spoils. If they erred in their choice of weaponry, albeit without deliberation, why should they not suffer the consequences rather than Mrs. Fleming—who after all was deprived of her liberty? To be sure, their good faith will carry weight in mitigation of damages but it should not be an absolute bar to recovery.

Vermont law, moreover, subscribes to this dichotomous classification between public officers on the one hand and private parties on the other, in determining liability in actions for false imprisonment. In a prior excursion into the intricacies of Vermont false imprisonment law, this Court commented:

> The decisions of the Supreme Court of Vermont in cases raising issues as to false arrest and imprisonment on mesne process fall into two distinct classifications: those dealing with suits brought against a party at whose instance the process was issued and those brought against the officer who served the process.

Williams v. Franzoni, *supra*, 217 F.2d at 534. The majority recognizes this distinction, noting that "the legal defenses afforded lawyers and clients for the issuance of a defective capias are not as broad as those which protect state officers." Yet, my brothers fail to suggest in what manner Vermont law, or indeed the general principles governing the law of intentional torts, further parse the qualified privilege for good faith conduct. I submit that no such sub-classifications exist: the good faith privilege either attaches or it does not.

The cases cited by the majority do not persuade me to the contrary. McMullen v. Erwin, 69 Vt. 338, 38 A. 62 (1897), exonerated the attorney for the complainant in a false imprisonment suit arising out of a defective capias writ be-

cause there was evidence in the record that someone had altered the writ *after* it had been issued by the attorney. Accordingly, the court held that the attorney, who was found to have originally issued a valid writ, could not be liable unless there was proof of complicity between the attorney and the individual who had subsequently tampered with the capias. In the instant case, however, if the Vermont capias writ statute were to be held unconstitutional, the writ issued by Kissane would have been invalid *ab initio*. *McMullen*, therefore, is inapposite.

Nor do I find Aldrich v. Weeks, 62 Vt. 89, 19 A. 115 (1889) particularly relevant here, for again, the court relied on the validity of the capias when issued by the attorney to exonerate him and his client from liability. Appellee Kissane cites Pierson v. Gale, 8 Vt. 508 (1836) to support his contention that the attorney issuing the writ has a good faith privilege in defense to a claim of false imprisonment. A careful reading of the case, however, reveals only that the court recognized a good faith privilege for judicial officers where the *court* had issued the capias writ. By way of contrast and not of little significance is that Kissane rather than an officer of the court issued the writ in this case. As the attorney for the complainant, he can hardly be considered a neutral decisionmaker whose role deserves the protection accorded judicial officers. *Cf.* Lynch v. Household Finance Corp., 405 U.S. 538, 552–556 and n. 25, 92 S.Ct. 1983 (1972).

Because I conclude that Vermont law does not accord a good faith privilege to private parties in a suit for false imprisonment, I am constrained to reach the question of the constitutional validity of the Vermont statutory provisions which authorized summary prejudgment body attachment.[1] I must confess that I

---

1. There is no doubt that Vermont's body attachment practice constituted a summary prejudgment procedure. Although Mrs. Fleming was brought before a magistrate prior to incarceration, her liberty was certainly invaded upon her arrest. The hearing she had, moreover, was restricted solely to setting bail. The Vermont statute, 12 V.S.

find my discussion of the question of constitutionality to border on the rhetorical, for I consider the archaic and uncivilized practice utilized here transparently unconstitutional.

Several decisions of the Supreme Court confirm my belief. In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972), for example, the Court was called upon to consider the validity of statutory procedures which authorized the seizure or replevin of property without prior notice or hearing. After a thorough examination of the Pennsylvania and Florida summary prejudgment replevin statutes, the Court concluded that neither was "narrowly drawn to meet any . . . unusual condition. Sniadach v. Family Finance Corp., *supra*, 395 U.S. at 339, 89 S.Ct. 1820." *Id.* 407 U.S. at 93, 92 S.Ct. at 2001. Accordingly both statutes were found to run afoul of the Due Process Clause of the Fourteenth Amendment.

Application of the *Sniadach* test to the Vermont statute before us produces

the same result.[2] Although there may be "extraordinary situations" which justify departure from traditional notions of due process, Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L. Ed.2d 113 (1971), the Court, in *Fuentes,* pointedly emphasized that such situations, "must be truly unusual." Fuentes v. Shevin, *supra,* 407 U.S. at 90, 92 S.Ct. 1983. Specifically, the Court rejected any attempt to equate statutes which serve important governmental or general public interests with those, like the Pennsylvania and Florida replevin statutes, which permit immediate and summary deprivation "when no more than private gain is directly at stake." *Id.*, at 92, 92 S.Ct. at 2000. Considering the raison d'etre behind Vermont's summary prejudgment body attachment procedure—to ensure by trading the defendant's freedom for bail the collectability of a private civil judgment should the complainant prove successful—it hardly stands on loftier footing than the replevin statutes examined in *Fuentes.*[3]

A. § 3573(a), did not require inquiry into the underlying merits of the predicate claim, and the magistrate in this case did not go beyond his duty under the statute.

2. Although the majority suggests that the import of *Sniadach* is still unclear, its unmistakable thrust was not lost upon the two able judges, the late Chief Judge Gibson and the late Judge Leddy, serving on the Vermont District Court at the time the *Sniadach* decision was announced. On September 24, 1969, the United States District Court for the District of Vermont adopted Local Rule 5, "in view of the United States Supreme Court ruling in *Sniadach,*" which states in pertinent part:

When a civil suit is filed, and the plaintiff seeks to invoke trustee process, attachment by seizure, or body attachment, a hearing for the purpose of establishing the validity of the underlying claim against the defendant and the equitable necessity of the process sought shall be held before a U. S. District Judge for the District of Vermont on or before ten days after service of the summons.

No disclosure by a Trustee, seizure of property or seizure of body shall be made until the probable validity of the underlying claim against the defendant and the equitable necessity of the process sought are established.

Nor was the impact of *Sniadach* and its progeny on the constitutionality of Vermont's body attachment practice seriously doubted by the revisers of the Vermont Rules of Civil Procedure. The Reporter's Notes for Rule 4.3, Vt.R.Civ.P., which abolished all forms of civil arrest before final judgment except for contempt of court and for failure to obey a subpoena read in relevant part:

While the Court has held civil arrest not in violation of the due process clause, LaFlamme v. Milne, 127 Vt. 301, 248 A.2d 692 (1968), cert. denied 395 U.S. 965 [89 S.Ct. 2111, 23 L.Ed.2d 751], 396 U.S. 915 (1969), the remedy is within the scope of Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337 [89 S.Ct. 1820, 23 L. Ed.2d 349] (1969), which made clear that provisional remedies depriving defendant of property even temporarily prior to adjudication on the merits of the claim against him will be permitted only as a matter of urgent necessity. . . .
There is every reason to suppose that the United States Supreme Court would restrict even more severely or forbid altogether a remedy that is a deprivation of personal liberty.

3. It should be noted that body attachment cannot find justification as the singular means by which the state court's jurisdiction

Nor could the Vermont statute before us be considered "narrowly drawn." Indeed, the impermissibly broad contours of the statutes in *Fuentes* are, if anything, surpassed by Vermont's capias writ procedure. Like the statutes condemned in *Fuentes*, the Vermont statute permitted the complainant's attorney to issue the writ without application to any judicial officer. Accordingly, there was no intervening state official to assess the merits of the underlying claim the attorney was asserting or the need for the drastic action he was implementing. Vermont, moreover, did not even require the complainant to post a security bond, a minimal safeguard against abuse present in the statutes struck down in *Fuentes*; or did the body seized have less value than the merchandise replevied?

There is, finally, one characteristic of the Vermont statute that to my mind dispels any question about its constitutionality—the extent of the deprivation it authorized. Unlike wage garnishment in Wisconsin or replevin in Florida and Pennsylvania, body attachment in Vermont struck at the very core of liberty by infringing upon personal freedom. Although the importance of property rights is not to be downgraded, *see* Lynch v. Household Finance Corp., 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), the right of an individual to be free in his person from governmental interference remains paramount. The Vermont capias writ procedure simply did not provide the process due when the deprivation of a right as sacred as liberty was involved.

can be secured. Ownbey v. Morgan, 256 U. S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1920). Although foreign property attachment may serve this purpose as a necessary substitute for in personam jurisdiction, it hardly need

Appellees have argued that even were we now to conclude that the Vermont statute was unconstitutional, that finding should not be applied retroactively to render their conduct in 1969 unlawful. This contention has little merit in light of the Supreme Court's decision in Pierson v. Ray, *supra*.

In *Pierson*, white and black ministers brought suit against Jackson, Mississippi police and a justice of the peace under 42 U.S.C. § 1983, and for the common law torts of false arrest and imprisonment. Their claims arose out of their arrest in 1961 pursuant to a statute which was not declared unconstitutional by the Supreme Court until 1965. Although there was dissent among the justices concerning the scope of privilege properly accorded to judicial officers, there was no dispute over whether the plaintiff-ministers had established a prima facie case. Thus, a unanimous Court necessarily accepted the principle that lawful justification could not be said to exist for acts pursuant to a statute subsequently found unconstitutional.

The *Pierson* rationale, therefore, squarely supports Mrs. Fleming's prima facie claim for false imprisonment. The state officials, Lagrow and Keenan, under a statutory duty to enforce the capias writ, have properly raised the qualified privilege of good faith conduct. But, a similar privilege should not and does not extend under Vermont law to private parties, acting solely in their own interests. Accordingly, I would reverse the directed verdict as to McEnany and Kissane and remand for a new trial.

be stated that if an individual can be served with a capias writ, then he can be served as well with the complaint, thereby establishing in personam jurisdiction.