**Stanley V. TUCKER, Plaintiff-Appellant,**

v.

**Joseph D. MAHER et al., Defendants-Appellees.**

**No. 663, Docket 73-2451.**

United States Court of Appeals, Second Circuit.

Argued March 18, 1974.

Decided May 7, 1974.

---

Stanley V. Tucker, pro se.

Maurice T. Fitzmaurice, Hartford, Conn. (Regnier, Moller & Taylor, Hartford, Conn., on the brief), for defendants-appellees.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The appellant, Stanley V. Tucker, acting pro se, commenced an action in the United States District Court for the District of Connecticut on April 9, 1970, challenging the constitutionality of Conn.Gen.Stat.Ann. § 49–33, which provides for the filing of materialmen's liens that become encumbrances upon title to real property. Tucker is a real estate developer in Connecticut and a materialman's lien had been filed against certain of his real property in Hartford, Connecticut on March 3, 1970, by an electrical subcontractor, L & M Electric Co., Inc. Subsequently, the subcontractor sued Tucker for $3000 damages in a civil suit in the state court of Connecticut arising from work performed in the construction of an apartment house where Tucker was allegedly acting as a general contractor. The materialman's lien was released and, in conjunction with the state suit, a real estate attachment was substituted as security on April 17, 1970. Tucker then amended his federal complaint to challenge the constitutionality of Connecticut's prejudgment attachment statutes, in particular Conn.Gen.Stat.Ann. §§ 52–279, 52–280 & 52–285. He sought both injunctive and declaratory relief, as well as $50,000 damages, by reason of an alleged deprivation of property in violation of his constitutional rights to due process and equal protection of law under the fourteenth amendment. In addition to L & M Electric Co., the complaint named as defendants Joseph D. Maher and Lawrence J. Levesque, who are officers of L & M; William J. Kotchen, who is an attorney representing the corporation and its officers; and Anthony DeLaura, who is a Deputy to the Sheriff of Hartford. All are alleged to have participated in the procurement and filing of either the materialman's lien or the attachment.

On November 16, 1970, Chief Judge M. Joseph Blumenfeld dismissed the complaint [1] on the ground that there was no subject matter jurisdiction under 28 U.S.C. § 1343(3), relying primarily upon the personal rights-property rights dichotomy drawn in Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969). This Court affirmed the dismissal, Tucker v. Maher, 441 F.2d 740 (1971) (per curiam). After the affirmance, the Supreme Court decided Lynch v. Household Fin. Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), which rejected the distinction made in *Eisen.* On April 17, 1972, the Supreme Court vacated the judgment in this case and remanded it to this Court, 405 U.S. 1052, 92 S.Ct. 1489, 31 L.Ed.2d 787, which in turn remanded to the District Court for the District of Connecticut, 471 F.2d 1370 (2 Cir. 1973) (per curiam).

On July 6, 1973, a three-judge court consisting of Senior Circuit Judge J. Joseph Smith and District Judges M. Jo-

---

1. This is one of three cases which were dismissed by the District Court for the District of Connecticut on November 16, 1970, the other cases being Tucker v. Connecticut Mason Contractors, Inc., Civ. No. 13,785, and Tucker v. Anderson, Civ. No. 13,787. In each case, Tucker challenged the constitutionality of Connecticut's prejudgment attachment statutes. *Anderson* involved an attachment of Tucker's real property obtained in conjunction with a civil suit to recover $9000 in arrearages for child support. The attachment involved in *Mason Contractors* was obtained by a materialman.

seph Blumenfeld and Jon O. Newman, once again dismissed the complaint. Civ. No. 13,786 (D.Conn). The court held that the request for injunctive relief was moot and inappropriate since the Connecticut General Assembly had implicitly annulled the challenged attachment statutes by enacting a new statute which became effective on May 30, 1973 and which provided for an adversary hearing prior to attachment (Public Act No. 73–431, 1973 Session). The court added as an additional reason for its declination of injunctive relief the fact that the defendants had already released the attachment challenged in the suit. The civil suit in the Connecticut court which prompted the attachment was settled when Tucker paid a compromise amount to the appellees.

On appeal the sole contention is that the court below erred in dismissing the complaint without a trial on the damage issue. Relying on Kavanewsky v. Greater Dev. Co., Civ. No. B–587 (D.Conn. July 6, 1973), the court held that "there is no basis for the assertion of a damage claim against those who, acting in good faith, secured an attachment under the then existing statutes." *Kavanewsky*, in turn, depended upon an opinion of Judge Newman, Pfotzer v. Dorr-Oliver, Inc., Civ. No. B–587 (D.Conn. May 11, 1973) which held that in the absence of any showing that persons have acted in bad faith in securing an attachment, they will not be required to respond in damages for proceeding under statutes that had not then been ruled invalid.

The initial question we face is whether or not this court has jurisdiction to hear this appeal which is at least nominally from a judgment of dismissal entered by a three-judge court. The fact that all of the parties agree that we do is consoling but obviously they cannot confer jurisdiction upon us. The question is vexing and the rules of the game are imprecise. Hopefully, the exercise will become obsolete. See generally James L. Oakes, Second Circuit Note 1972 Term—Foreward: The Three-Judge Court and Direct Appeals to the Second Circuit, 48 St. John's L.Rev. 205 (1973).

The Supreme Court has exclusive appellate jurisdiction from orders "granting or denying . . . an interlocutory or permanent injunction. . . ." 28 U.S.C. § 1253; see Lynch v. Household Fin. Corp., *supra,* 405 U.S. at 541, n. 5. In our view, the appeal here from the dismissal of the complaint is not, in essence, an appeal from such an order. The release of the materialman's lien and the attachment prior to judgment, as well as the enactment of a new statute (two days after the argument before the court), which in effect repealed the legislation challenged by the complainant, rendered moot the injunctive relief which was sought. Hernandez v. European Auto Collision, Inc., 487 F.2d 378, 386–387 (2d Cir. 1973); Kerrigan v. Boucher, 450 F.2d 487 (2d Cir. 1973); see Rosado v. Wyman, 304 F.Supp. 1354 (E.D.N.Y.), aff'd, 414 F.2d 170 (2d Cir. 1969) rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). The appellant here does not seek review of the order denying injunctive relief but is instead concerned with the claim for damages. The appeal therefore is properly to this court. See Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 763, 26 L.Ed.2d 378 (1970) (per curiam); 9 J. Moore, Federal Practice ¶ 110.03 [3], at 77–85 (2d ed. 1973).

Had the fact of release and the repeal of the statute which was challenged been made known to the court prior to the argument, it might well have been dissolved, as happened in Rosado v. Wyman, *supra,* since the injunctive relief sought was obviously mooted. In such case the appeal would clearly be to this court. In *Rosado,* we affirmed the dissolution, 414 F.2d 170 (1969), rev'd on another issue, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), after the Supreme Court had dismissed a direct appeal from the judgment of the three-judge court for want of jurisdiction, 395 U.S. 826, 89 S.Ct. 2134, 23 L.Ed.2d 739 (1969) (per curiam). Having heard the argument as a three-judge court, the

court did not dissolve itself. It would be an exercise in futility to send the case back to dissolve the court and inevitably have a single judge reach the same conclusion. See 9 Moore's Federal Practice ¶ 110.03 [3], at 77–79 (2d ed. 1973). See also our discussion in Jordan v. Fusari, 496 F.2d 646 (1974). In view of the unusual procedural posture of the case, the fact that the litigation has persisted for four years and the Supreme Court's admonishment that its appellate jurisdiction is to be narrowly construed, Gunn v. University Comm. to End the War, 399 U.S. 383, 387, 90 S.Ct 2013, 26 L.Ed.2d 684 (1970), we believe that the appeal should now be decided in this forum.

The question of what constitutes a constitutional tort under § 1983 has provoked learned comment [2] but actual litigation has not provided us with much precedential material. We can, however, at the outset rather easily dispose of the claim against the Deputy Sheriff De-Laura. There is nothing in the record to suggest that he was acting in bad faith. His sole role here was to serve a copy of the writ of attachment upon the Clerk of the Town of Hartford. There is no indication that the writ was facially defective, that he was improperly motivated, or that he deviated from the statutory procedure. This is not a case of a peace officer who is making an arrest claiming that he had probable cause to believe that a crime was being committed. In such a case there may be some question of good faith which will raise a factual question. Here, there is none. DeLaura was performing a ministerial function which he was obligated to do.

 The only basis for Tucker's claim against DeLaura is that the statute under which he proceeded was unconstitutional. It is well settled, however, that a peace officer cannot be

charged with the responsibility of predicting the future course of constitutional law. Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In the absence of bad faith, it is therefore apparent that no action lies against DeLaura under § 1983. There is abundant authority for this proposition even where a warrantless arrest is made. See, e. g., Anderson v. De-Cristofalo, 494 F.2d 321 (2d Cir. 1974) (per curiam); Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973); Rodriguez v. Jones, 473 F.2d 599 (5th Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). A fortiori, where an attachment is effected by a sheriff filing a writ with a town clerk upon an affidavit made by a party which is ancillary to a state civil action, we have no hesitation in finding that he has no personal tort liability under § 1983.

 The role of the private party appellees, litigants and their counsel is, of course, distinguishable, but upon analysis we find no sound basis for finding liability and no reason to remand for trial. The only case we have found squarely in point so holds. In Rios v. Cessna Fin. Corp., 488 F.2d 25 (10th Cir. 1973), a finance corporation brought a replevin action which resulted in the seizing of airplanes owned by the plaintiff. The New Mexico statute was later declared unconstitutional in so far as it provided for a prejudgment taking of property without notice. The court held:

A statute is presumed to be constitutional until struck down as unconstitutional. Cessna Finance followed the statutory procedure in bringing its replevin action. We therefore hold that § 1983 is not applicable because damages are not collectible in a civil right action against one who followed a statutory procedure presumed to be

---

2. See, e. g., Shapo, Constitutional Tort: Monroe v. Pape, and the Frontiers Beyond, 60 Nw.U.L.Rev. 277 (1965); Comment, Choice of Law under Section 1983, 37 U. Chi.L.Rev. 494 (1970); Comment, Civil Ac-

tions for Damages Under the Federal Civil Rights Statutes, 45 Texas L.Rev. 1015 (1967); Note, Constitutional Torts: Section 1983 Redress for the Deprived Debtor, 14 Wm. & Mary L.Rev. 627 (1973).

constitutional. . . . And although Rios now questions the good faith of Cessna Finance in proceeding under the replevin laws of New Mexico, we believe no factual issue on the question exists.

488 F.2d at 28 (citation deleted).

The only case we have found in this Circuit which is instructive is Fleming v. McEnany, 491 F.2d 1353 (1974). There a plaintiff sought to recover damages against a private citizen and her attorney for false imprisonment. A civil capias writ and a complaint had been issued which resulted in the plaintiff's incarceration in a Vermont County Jail for a twenty-day period. The federal complaint urged that the Vermont statute violated due process under the fourteenth amendment since it made no provision for a judicial hearing prior to arrest. Sniadach v. Family Fin. Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The majority, while admitting that legal defenses afforded lawyers and clients for the issuance of a defective capias are not as broad as those which protect state officers, nonetheless held that under Vermont law there was no tort liability merely because the statute under which the plaintiff was arrested was later held to be unconstitutional. The court rejected the theory that counsel should have anticipated the invalidation of the Vermont statute on the basis of the prior decision of the Supreme Court in Sniadach.

Fleming is distinguishable, of course, since it was a diversity action with the court applying Vermont state law to determine whether or not tort liability for false imprisonment existed. While it was not a § 1983 case, a review of relevant authority indicates that some nexus does exist between the nebulous § 1983 tort and its conventional common law counterpart. This much was made initially clear by Mr. Justice Douglas in Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961),

when he indicated that the statute "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." See also Pierson v. Ray, supra, 386 U.S. at 556–557.

Later, in Adickes v. S. H. Kress & Co., 398 U.S. 144, 231–233, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), Mr. Justice Brennan in his separate opinion, concurring in part and dissenting in part, pointed out that the common law is not an infallible guide. He argued that where there has been a denial of equal protection as the result of racial discrimination, the central evil that § 1983 was designed to eradicate, a plaintiff should prevail upon the mere showing of the proved violation even if the discriminator was unaware of the constitutional dimension of his wrong doing. It seems to be rather well established that in such cases no wrongful intent, i. e., an intention to deprive a person of his constitutional rights, is necessary. Monroe v. Pape, supra, 365 U.S. at 187.

This approach was taken by Judge Wyzanski in Rose Chalet Functions Corp. v. Evans, 264 F.Supp. 790 (D.Mass. 1967), and also by Judge Goldberg in Whirl v. Kern, 407 F.2d 781 (5th Cir.), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969), which was cited with approval by Mr. Justice Brennan in Adickes. It must be emphasized that there is no element of discrimination, racial or otherwise, in the case before us. Nor is there any deprivation of personal liberty involved. Although Lynch v. Household Fin. Corp., supra, does give a federal court jurisdiction under § 1343(3) of controversies involving deprivation of property, as well as those of personal liberty, the cases we have referred to indicate that it does not follow that the element of § 1983 scienter is identical.[3]

■ Mr. Justice Brennan in Adickes pointed out that "[i]n some types of cases where the wrong under § 1983 is

---

3. See also Chief Judge Kaufman's dissenting opinion in Fleming v. McEnany, 491 F.2d 1353, 1360 (1974), which emphasizes the primacy of concern for rights of personal liberty as compared with property deprivation.

closely analogous to a wrong recognized in the law of torts, it is appropriate for the federal court to apply the relevant tort doctrines as to the bearing of particular mental elements on the existence and amount of liability." 398 U.S. at 231–232. Thus, while normally the requirement of ulterior purpose or improper motive is not necessary to establish a § 1983 violation, as Judge Goldberg observed in Whirl v. Kern, *supra*, 407 F.2d at 787–788: "[W]hen an essential element of the *wrong* itself under well established principles of tort law includes the demonstration of an improper motive as in malicious prosecution, . . . then such principle becomes a part of sec. 1983."

█ The claim here, in essence, is one of malicious prosecution. The major thrust of the complaint is that the appellees wrongfully obtained a materialman's lien and commenced a civil action against the appellant which was baseless, and in so doing they utilized the provisional remedy of attachment which was unconstitutional, since the statute provided no prior opportunity for him to contest the debt and thus deprived him of the use of his property. There is no doubt but that a wrongful deprivation of property in a civil proceeding may be the basis for a subsequent common law action for malicious use of civil process. Restatement of Torts § 677 (1938); W. Prosser, Law of Torts § 114 (3d ed. 1969). However, the complaint here is fatally defective, in our view, and was properly dismissed.

█ The common law tort of malicious use of civil process does require that the plaintiff establish an improper motive on the part of the defendant. More precisely, the plaintiff must establish that the civil proceedings were initiated without probable cause and primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings were based. Restatement of Torts, *supra*; W. Prosser, Law of Torts, *supra*. The Connecticut

statutes involved here to our knowledge have never been declared unconstitutional. The court below never reached the issue because the controversy had become mooted. However, assuming their unconstitutionality, we cannot find that their utilization by the appellees constitutes the scienter required to establish the tort.

The corporate and individual appellees apparently acted on the advice of counsel and no evil intent can be properly ascribed to them. See Restatement of Torts, *supra*, § 675, Comment on clause (b) (1938). Nor can we attribute any sinister motive to counsel. He utilized statutory procedures which were the traditional legal processes employed by contractors and materialmen to collect debts incurred in the course of their business activities. The statutes had not then nor have they been since declared unconstitutional. On the contrary, on February 25, 1971, some ten months after the complaint was amended to challenge the constitutionality of the prejudgment attachment statutes of Connecticut (Conn.Gen.Stat.Ann. § 52–279 et seq.), District Judge Zampano held that they were constitutional, distinguishing *Sniadach*. Black Watch Farms, Inc. v. Dick, 323 F.Supp. 100 (D.Conn.1971). Because the Supreme Court in *Sniadach* held another statute in another State unconstitutional, we are urged in effect to find that counsel should have attributed constitutional infirmity to the Connecticut statutes and that his failure to do so is tantamount to the institution of civil proceedings without probable cause and for an improper motive. We cannot accept this as a reasonable proposition.

█ Constitutional law, particularly in this difficult and confusing area of state action and due process, is hardly predictable with any degree of certainty. The very recent history of such constitutional litigation in this circuit should convincingly indicate that the role of the prophet is precarious at best.[4] We think,

---

4. In Shirley v. State Nat'l Bank, 493 F.2d 739 (2d Cir. 1974) and Bond v. Dentzer, 494

F.2d 302 (2d Cir. 1974), after both panels had split 2–1 over state action issues, re-

as a majority of this court did in Fleming v. McEnany, *supra,* that counsel here had a right to rely on the statutory law of the jurisdiction which had not been repealed or replaced, or declared unconstitutional by any competent court at the time it was utilized. If counsel had failed to file the lien to protect his client, he might well be exposed to personal liability. State legislation is under increasing constitutional attack but until the assault in successful, attorneys should be entitled to rely upon the presumption of constitutionality. Certainly their dependence upon a statute later found vulnerable is not to be equated with the malevolent intent basic to this particular tort, which Professor Prosser tells us is not even recognized in a large minority of states. W. Prosser, Law of Torts, *supra,* at 870.

 Aside from the claimed unconstitutionality of the statutes, there is nothing of substance in the complaint to justify any inference of improper motive. The appellant urged that the materialman's lien was defective in that it did not comply with pertinent time limitations in the statute. However, it is significant that the statutory law (Conn. Gen.Stat.Ann. § 49–51) provided him with a remedy and an opportunity to contest the lien which he never exercised. He further claims that he never owed the money but he never established this in any court and in fact he settled the claim by payment. The tort of malicious use of civil process also requires as an essential element that the civil action giving rise to the tort claim be terminated in the plaintiff's favor. Restatement of Torts, *supra,* § 677; W. Prosser, Law of Torts, *supra,* at 873. This the appellant of course has failed to establish. The lien and attachment procedures here employed were merely ancillary to an underlying contractual claim. The merits of that claim have never

been decided in favor of the plaintiff. He deliberately chose not to contest them and in fact paid a sum of money in settlement. In our view, he therefore has no § 1983 claim. There is nothing for a jury to determine and we therefore affirm.

hearings en banc were denied on March 29, 1974 by votes of 5–3. In Jackson v. Statler Foundation, 496 F.2d 623 (2d Cir. 1974), again a state action case, a rehearing en banc was also denied by a failure of a majority of the active judges to vote in favor of such reconsideration; the vote was 4–4, 496 F.2d at 636.