Richard A. HICKLAND, Sandra L. Hickland, James S. Hickland (Minor born 11/8/73), John A. Hickland (Minor born 2/5/75), and Amanda Hickland (Minor born 10/14/76), Plaintiffs,

v.

R.H. ENDEE, Jr., personally and as a New York State Trooper, the Town of Argyle, County of Washington, State of New York; County of Washington, State of New York; the State of New York, United States of America, Defendants.

No. 78–CV–172.

United States District Court, N.D. New York.

Sept. 28, 1983.

Pattison, Sampson, Ginsberg & Griffin, P.C., Troy, N.Y., for plaintiffs; Gerald H. Katzman, Troy, N.Y., of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for defendants R.H. Endee, Jr. and the State of N.Y.; Mordecai Bressler, Asst. Atty. Gen., Albany, N.Y., of counsel.

McPhillips, Fitzgerald, Meyer & McLenithan, Glens Falls, N.Y., for defendants Town of Argyle and County of Washington; James D. Horwitz, Glens Falls, N.Y., of counsel.

MINER, District Judge.

## I

This action arises out of the alleged violations of plaintiff's civil rights by New York State Trooper R.H. Endee, Jr., the Town of Argyle and the County of Washington.[1] The action is brought pursuant to 42 U.S.C. § 1983, and jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343. A trial to the Court was had on January 5–7

1. Originally named as defendants were State Trooper Endee, the Town of Argyle, the County of Washington and the State of New York. However, the allegations in the body of plaintiff's complaint fail specifically to refer to the State as a defendant. In any event, this suit against New York State is barred by the eleventh amendment to the United States Constitution. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

By an earlier decision of this Court, all claims against defendants Town of Argyle and County of Washington were dismissed pursuant to Fed. R.Civ.P. 12(b)(6). *Hickland v. Endee,* No. 78–CV–172 (N.D.N.Y. Sept. 23, 1982). Additionally, pursuant to this Court's unpublished order of November 8, 1982, plaintiffs Sandra Hickland, James Hickland, John Hickland, and Amanda Hickland all have been dropped from the suit.

2. The following witnesses testified on behalf of plaintiff: Wallace McWhorter, Town Justice of the Town of Argyle; defendant Robert H. Endee; Robert LaFoy, Superintendent of Highways for the Town of Argyle; plaintiff Richard Hickland; Stanley E. Hook, Captain, New York State Police; Robert A. Given.

Defendant called the following witnesses: New York State Trooper James Dean; Dr. Leith Skinner, Town of Argyle Health Officer; Muriel A. Swanson; Paul L. Stephan; William J. Morrison.

and 18–19, 1983.[2] The final submissions of counsel were filed on May 25, 1983.

## II

In 1969, Richard Hickland commenced farming in Argyle, New York, on property which later became known as Beaver Brook Farms.[3] The primary operation of the farm consisted of raising Hereford cattle.[4] On December 16, 1976, Terry Gray, a neighbor of the Hickland farm, advised New York State Trooper James Dean that he had been involved in an accident with one of Richard Hickland's animals. (Transcript, p. 537). The accident occurred on McClay Road, adjacent to the Hickland farm. Upon investigation, Trooper Dean discovered a dead Hereford lying on the west shoulder of McClay Road approximately 150 feet north of the Alice Hickland residence. (Transcript, p. 538). Later that evening, Dean telephoned Richard Hickland at his home in Salem, New York and spoke to Sandra Hickland, Richard's second wife.

3. The Argyle property was purchased in 1969 by Richard Hickland and his former wife, Alice Hickland. The Hicklands were divorced on April 15, 1974. In January of 1975, use and possession of the Argyle farm were granted to Richard Hickland for his farming operation while his former wife retained use and possession of the farm residence. Richard Hickland resided in the town of Salem, New York, approximately 10 miles from the farm.

4. More specifically, plaintiff was engaged in raising registered, pure-bred Herefords. Herefords registered with the Hereford Association primarily are considered breeding animals, and are sold to other farmers who are interested in improving their herd quality. (Transcript, pp. 248–49). Each registered head of cattle is given an identifying number which is tattooed in the animal's ear. (Transcript, p. 249). Richard Hickland testified that all of his cattle were so tattooed (except for very small calves). Additionally, he testified that all of his cattle were tattooed with the "BBF" (Beaver Brook Farms) brand. (Transcript, p. 249).

The distinguishing characteristic of a Hereford apparently is its reddish brown body and white face. (Transcript, p. 117). Among Herefords, there is also a distinction between horned and polled (unhorned) animals. According to trial testimony, most of the Hickland Herefords had horns. (Transcript, p. 436).

Trooper Dean advised Mrs. Hickland to have the dead cow removed from the road. (Transcript, pp. 538–39).

On December 17, 1976, defendant Robert Endee received a telephone complaint from Alice Hickland about a dead animal on the shoulder of McClay Road. (Transcript, pp. 113–15). Endee then interviewed Mrs. Hickland, who advised him that the cow belonged to Beaver Brook Farms. (Transcript, pp. 115–16, 215–16). Thereafter, Endee travelled to the Hickland farm and examined the dead Hereford but could find no markings which conclusively would identify its owner. Endee then contacted Dr. Leith Skinner, the Town of Argyle Health Officer, who apparently authorized Endee to "act as his agent" in seeing that the cow was removed. (Transcript, p. 559). Accordingly, Endee drove ten miles to Richard and Sandra Hickland's residence in Salem, New York, and instructed Richard Hickland to remove the dead animal by sundown of the next day. (Transcript, pp. 118–19). Specifically, Trooper Endee informed Richard Hickland

> that if the bull was not removed by sundown on the following day, that the Town would remove it, the Town Highway Department, and that he would be charged the fee for their time and cost. (Transcript, pp. 133–34).[5]

Additionally, Endee informed Richard Hickland that some of his cattle were loose on McClay Road. (Transcript, pp. 134, 255).

Richard Hickland responded that he had to attend a funeral out of state the next day but that "he would see what he could do about it." (Transcript, pp. 133, 254). Satisfied with this response, Endee "considered the case closed." (Transcript, p. 220). Hickland testified also that, later that evening, he drove to Beaver Brook Farms in an attempt to comply with Endee's instructions but that he could find neither the dead cow nor any roaming animals. (Transcript, p. 255). He further testified that all the gates used to fence in his cattle were securely closed.

The next day (December 18th), Richard Hickland left for Connecticut. That night, Trooper Endee returned to McClay Road to check if the dead cow had been removed. (Transcript, p. 139). Endee testified that the dead cow had not been moved and that other live cattle still were running loose on McClay Road. (Transcript, p. 149). Trooper Endee again returned to the farm on Sunday the 19th to see if the dead cow had been removed. Endee testified further that he went to the farm for the additional purpose of taking the deposition[6] of Terry Gray needed to support an information charging Richard Hickland with criminal nuisance. (Transcript, pp. 151–52). By this time, the dead cow had been removed by the Town Highway Superintendent, Robert LaFoy. (Transcript, p. 150).

That evening, Trooper Endee filed two informations with Judge McWhorter, the town justice, charging Richard Hickland with a violation of § 12–b of the New York Public Health Law[7] and § 240.45 of the New York Penal Law.[8] Based on these

---

5. Apparently, Trooper Endee did not advise Richard Hickland that he would be subject to arrest for failure to comply with this directive. According to Endee's testimony, he had no intention of making an arrest, since he assumed that Richard Hickland would comply with his request. (Transcript, p. 148).

6. The "depositions" referred to here as well as those appearing elsewhere in this opinion are not depositions within the meaning of the Federal Rules of Civil Procedure. Rather, they are statements contained on an official New York State Police form labelled "Deposition of Witness to Accompany Complaint or Information." The statements so made are not sworn to in all cases but the forms put declarants on notice

that any false statements made therein are punishable as a class A misdemeanor pursuant to § 210.45 of the New York Penal Law.

7. N.Y.Public Health Law § 12–b.1 (McKinney 1979):

A person who wilfully violates or refuses or omits to comply with any lawful order or regulation prescribed by any local board of health or local health officer, is guilty of a misdemeanor ....

8. N.Y.Penal Law § 240.45 (McKinney 1980):

A person is guilty of criminal nuisance when:

1. By conduct either unlawful in itself or unreasonable under all the circumstances, he

informations,[9] Judge McWhorter issued a warrant for the arrest of Richard Hickland. Additionally, after conferring with the town supervisor and the highway superintendent, Judge McWhorter decided that the presence of Hickland livestock on the highway posed enough risk of danger to warrant impounding the loose cattle. (Transcript, p. 159). On Monday, December 20, all of the Hickland cattle were rounded up and transported to Miller's Livestock Market.

Sometime on the 20th of December, Richard Hickland arrived at the State Police Substation in Salem to inquire as to the whereabouts of his cattle. (Transcript, p. 172). After telling Hickland that his cattle had been impounded, Trooper Endee advised him that he was under arrest for violations of the Penal Law and the Public Health Law, but permitted Hickland to drive his family home before placing him in custody. Hickland was arraigned later that day before Judge McWhorter. (Transcript, pp. 174–75).

Nearly three weeks later, on January 7, 1977, there was another accident near the Hickland Farm allegedly involving one of Richard Hickland's cows. Trooper Endee was instructed by his superior, Sergeant Russell Guard, to proceed with an investigation already commenced by two other New York State Troopers. Sergeant Guard apparently requested the efforts of Trooper Endee due to his familiarity with

"the information and the law," having "previously handled the situation with Mr. Hickland." (Transcript, p. 188). This second accident, reported to have occurred at 2:40 A.M. on January 7, 1977, involved a collision between an automobile driven by Carol Guard (Sergeant Guard's teenage daughter) and a stray Hereford bull. The accident occurred on County Route 49 near both the Hickland farm and the home of Thomas Hughes. The two troopers who originally investigated the accident reported a statement by Hughes that the bull belonged to Richard Hickland. Accordingly, Trooper Endee interviewed Hughes on January 14, 1977 and obtained from him a deposition stating the following:

> That on January 7th, 1977 at about 2:40 A.M. a Hereford bull, belonging to the Hickland Farm, was struck by a car operated by Carol Guard, on County routy, [sic] 49, near my home. (Defendant's exhibit J.).

On January 14, 1977, Judge McWhorter issued a warrant for the arrest of Richard Hickland based on the Hughes deposition and an accompanying information executed by Trooper Endee.[10] On January 15, 1977, Richard Hickland was arrested by Trooper Endee and promptly arraigned before Judge McWhorter on a charge of criminal nuisance. (Transcript, p. 196).

On June 27, 1977, Richard Hickland was acquitted by a jury on the criminal nui-

knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons . . . .

9. In addition to the informations, Trooper Endee submitted to Judge McWhorter several supporting depositions, including that of Dr. Skinner, stating that Endee had in fact been authorized to act as an agent of the Health Office in directing Richard Hickland to remove the cattle; a deposition executed by Terry Gray, describing his auto accident on McClay Road involving an animal; a deposition by Muriel Swanson, a neighbor of the Hickland Farm, alleging that on numerous occasions Richard Hickland's cattle had intruded upon her property; and the deposition of Richard Smith, alleging that Hickland cows had been loose on McClay Road on December 17, and that one of them came in contact with his car.

10. Although there is some question as to precisely what documents served as the basis for the issuance of the warrant, there is no question that Judge McWhorter was presented with the deposition of Thomas Hughes as well as the information executed by Trooper Endee. There was also testimony by Trooper Endee and Judge McWhorter that a deposition of Carol Guard was submitted in support of the accusatory instrument. (Transcript, pp. 85–89, 193). However, it appears that the Guard deposition was not executed until January 15, 1977, the day after the warrant was issued. If that is in fact the case, then the warrant was issued solely on the basis of Trooper Endee's information and the rather skeletal deposition of Thomas Hughes.

sance charge stemming from the December 19, 1976 information. The remaining two informations (the December 19, 1976 information charging a violation of § 12–b.1 of the Public Health Law, and the January 14, 1977 information charging criminal nuisance) both were dismissed "in the interest of justice" upon motion by the District Attorney pursuant to § 170.40 of the New York Criminal Procedure Law.[11]

### III

The threshold inquiry in a § 1983 action is twofold. The Court must consider both whether the conduct complained of was committed by a person acting under color of state law as well as whether that conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

There is no question that defendant Endee, in his capacity as a state trooper, was acting "under color of state law." *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). What is less clear, however, is whether or not Endee's actions served to deprive plaintiff of his constitutional rights.

In a § 1983 action the burden is on the plaintiff to prove by a preponderance of the evidence that conduct of the defendant "caused him to be subjected to a deprivation of constitutional rights." *Duchesne v. Sugarman*, 566 F.2d 817, 831 (2d Cir.1977); *see also Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). The gravamen of plaintiff's complaint[12] is that the actions of defendant Endee constitute a violation of plaintiff's constitutional rights under the fourth, fifth and fourteenth amendments.[13] More spe-

---

**11.** Section 170.40 provides:

1. An information, a simplified traffic information, or a misdemeanor complaint, or any count thereof, may be dismissed in the interest of justice, as provided in paragraph (g) of subdivision one of section 170.30 when, even though there may be no basis for dismissal as a matter of law upon any ground specified in paragraphs (a) through (f) of said subdivision one of section 170.30, such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice.

**12.** Counts one and two of plaintiff's amended complaint originally set forth claims against all named defendants based on conversion of the Hickland cattle, and a conspiracy to deny plaintiff access to the courts. Both of these counts were dismissed as to all defendants pursuant to the earlier decision of this Court. *Hickland v. Endee*, No. 78–CV–172 (N.D.N.Y. Sept. 23, 1982). The sole issue presently before this Court, therefore, concerns only allegations contained in counts three and four of the amended complaint, namely, false arrest and malicious prosecution.

**13.** Throughout these proceedings, plaintiff has maintained that the constitutional deprivation here at issue was effected through a conspiracy on the part of defendant Endee and Town Justice McWhorter. Specifically, plaintiff alleges a "close relationship" between Judge McWhorter and defendant Endee, (Transcript pp. 53–55),

and suggests that Endee and McWhorter "jointly" decided to impound stray Hickland cattle, (Transcript pp. 159, 169). On the basis of the evidence adduced at trial, however, this Court remains unconvinced as to the existence of any such conspiracy.

The "close relationship" to which plaintiff refers is certainly not out of the ordinary, considering the interrelated functions performed by these two defendants. The testimony of Judge McWhorter specifically disavows any social relationship with defendant Endee and acknowledges only the "line of duty" contacts that certainly would be expected between a town justice and a locally stationed state trooper.

With respect to any "joint venture" involving the impounding of the plaintiff's cattle, two points are in order. First, the claim of conversion already has been dismissed. Second, plaintiff's proof falls far short of suggesting even an inference of impropriety with respect to such concerted action. The impounding simply was a task requiring the efforts of more than one individual, and no conspiratorial motive reasonably may be found to exist. Indeed, plaintiff has failed completely to produce any evidence other than mere conjecture or speculation as to the existence of any conspiracy. *Cf. Greene v. Brown*, 535 F.Supp. 1096, 1099 (E.D.N.Y.1982) (§ 1985 action); *Morpurgo v. Board of Higher Education*, 423 F.Supp. 704, 711 (S.D.N.Y.1976) (§ 1985 action; "[a]lthough plaintiff has made some minimal effort to set forth the interrelationships of the alleged co-conspirators and the parameters of the conspiracy, she has done so by way of freewheeling and speculative allegations and has failed ... to allege any facts that could give rise to a reasonable inference of a

cifically, the conduct complained of here relates to the allegedly improper filing of criminal informations by defendant Endee and the resultant arrest of plaintiff on two separate occasions. Essentially, plaintiff has set forth constitutional claims of false arrest and malicious prosecution. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Singleton v. City of New York*, 632 F.2d 185 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). This Court's analysis, therefore, must begin with a discussion of the elements necessary to support such claims.

## IV

### A. Malicious Prosecution

■ In order for a plaintiff to recover on a claim of malicious prosecution, four distinct elements must be established. The plaintiff must demonstrate that (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual mal-

ice. *Russo v. State of New York*, 672 F.2d 1014, 1018 (2d Cir.1982); *Martin v. City of Albany*, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306 (1977); *Broughton v. State of New York*, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, 318, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).[14]

■ Here, plaintiff's complaint centers upon defendant Endee's alleged lack of probable cause at the time he filed the informations charging plaintiff with criminal nuisance and violation of the New York State Health Law.

With respect to the first two informations filed on December 19, 1976, it is clear that plaintiff has failed to meet his burden of proving by a preponderance of the evidence a lack of probable cause. While the record contains extensive testimony concerning the factors surrounding defendant Endee's decision to file these initial informations, there is no clear indication that his actions were prompted by other than probable cause. Indeed, the "totality of the circumstances" informing Endee's decision to file the informations provides ample support for a finding of probable cause.[15]

conspiracy" (footnote omitted)); *Johnson v. Branch*, 242 F.Supp. 721, 732 (E.D.N.C.1965) ("The plaintiff must do more than set forth facts showing a vague possibility of a conspiracy. She must, with some particularity, prove overt acts which defendants engaged in and that are reasonably related to the promotion of this claimed conspiracy .... It is acknowledged that plaintiff need not prove the date and place of defendants' meetings and a summary of their conversation ..., but when plaintiff's proof establishes a factual situation which would just as well justify defendants' conduct as to lead to an inference of conspiracy, then plaintiff has failed to carry her burden"), *rev'd on other grounds*, 364 F.2d 177 (4th Cir.1966), *cert. denied*, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967).

14. While the elements so stated are required to sustain a tort action under New York law, it is clear that these same elements are necessary in a § 1983 claim. *See Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Brault v. Town of Milton*, 527 F.2d 730, 740 (2d Cir.1975) (en banc).

15. *See Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The *Gates* decision

represents the Supreme Court's most recent pronouncement on what is required for a showing of probable cause. Rejecting any rigid, specific tests, the Court reaffirmed its view that probable cause necessarily deals with an assessment of probabilities which are "not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at ——, 103 S.Ct. at 2328. Accordingly, the decision instructs reference to a totality of the circumstances analysis in which the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at ——, 103 S.Ct. at 2332. While *Gates* dealt only with the probable cause showing required for the issuance of a warrant by a magistrate, there is no reason why the same standard should not govern the basis upon which defendant Endee filed his information.

Plaintiff apparently operates under the misconception that Endee was required to be absolutely certain of the identity of the cows before instructing Richard Hickland to have them removed. However, "it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable

Plaintiff contends that a more thorough, conscientious investigation by Trooper Endee would have revealed to him that the dead cow on McClay Road was not one owned by Richard Hickland or Beaver Brook Farms.[16] This Court is not persuaded by such an argument. It is important to note that Officer Endee did not automatically assume the cow belonged to Richard Hickland. On December 17, 1976, Trooper Endee was advised by Alice Hickland (plaintiff's former wife) that the dead cow was in fact one belonging to Beaver Brook Farms. (Transcript, p. 116). Endee then attempted to confirm ownership of the cow by examining it. While a positive identification could not be made, Endee was satisfied that it belonged to Richard Hickland because it was near the Hickland farm and because it was the type of cow kept by Richard Hickland. Furthermore, Endee, based on past experience, was aware that Hickland cows often were found roaming McClay Road. Significantly, Endee did not base the information solely on these factors. Rather, he travelled ten miles to the Salem, New York residence of Richard Hickland in order to inform him that one of the Beaver Brook Farms cows was lying on McClay Road and to request that he remove it. After speaking with Richard Hickland, who stated that he would see what he could do about removing it, (Transcript, p. 121), Endee was left with no reason to doubt that the cow did in fact belong to Beaver Brook Farms. While Endee testified that he already had made his determination of ownership prior to speaking with Richard Hickland, it is important to note that the information he ultimately filed was based on additional evidence, that is, the perceived acquiescence of Richard

Hickland in Endee's order to remove the dead cow.

Although this Court concludes that Endee had probable cause to believe the cow belonged to Richard Hickland, that is not the only relevant probable cause inquiry. The basis of the informations was not only the presence of the animals on the road, but rather a failure on the part of Richard Hickland to comply with the orders from Trooper Endee to remove the dead cow and to keep other live cows off McClay Road. It was not until after Trooper Endee noted non-compliance with these orders that the informations were executed. Clearly, there was probable cause to support Endee's belief that Richard Hickland did not obey his orders. Because plaintiff has failed to establish the absence of probable cause as to these two informations, a claim for malicious prosecution stemming therefrom will not lie.

Similarly, with respect to the third information filed on January 14, 1977, plaintiff has failed to prove by a preponderance of the evidence that Trooper Endee lacked probable cause in executing the accusatory instrument. The record clearly indicates that Endee was instructed to proceed with an investigation of an accident involving a cow near the Hickland farm. When Endee took charge of the investigation already commenced by two other troopers, he was privy to a police blotter entry made by the original investigating officers which indicated that Thomas Hughes, a neighbor of the Hickland farm, said that the cow that was hit belonged to Richard Hickland. (Transcript, p. 205). Based on this information, Endee proceeded to obtain a deposition of Thomas Hughes to the same effect. While the deposition of Hughes was not

cause.'" *Id.* at ——, 103 S.Ct. at 2330 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)). This Court is persuaded that under the totality of the circumstances, Trooper Endee was justified in formulating his belief that the cattle were in fact those of Richard Hickland.

**16.** Despite extensive testimony, the record does not reveal who in fact owned the cow. Richard Hickland testified that all of his cattle were ear-tattooed with both a registered number and

the letters "BBF" (Beaver Brook Farms). Trooper Endee, however, testified that the dead cow on McClay Road had no identifying marks. Rather, he believed it to be Hickland's animal based on other circumstantial evidence. In any event, there is no indication that Endee knew that all of Hickland's cows were tattooed, and so, the absence of a tattoo on the dead cow would not necessarily have alerted him to the possibility of another owner.

overly detailed, it did recite in unequivocal terms that the cow involved in the accident belonged to Richard Hickland. Moreover, Trooper Endee swore, on information and belief, that on nine prior occasions complaints had been filed concerning Hickland cattle roaming on public roads. On the basis of such facts, and in the absence of satisfactory proof to the contrary having been offered by plaintiff, it cannot be said that defendant Endee lacked probable cause to file the informations. Accordingly, as to the third information, a claim for malicious prosecution also will not lie.

 Even if plaintiff proved by a preponderance of the evidence a lack of probable cause,[17] the malicious prosecution claim still must fail for want of an additional element, viz., malice. Malice is of course an indispensable element of a malicious prosecution claim under state law. *Russo v. State of New York*, 672 F.2d 1014, 1018 (2d Cir.1982); *Martin v. City of Albany*, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306 (1977). Plaintiff argues, however, that malice need not be shown in order to proceed under § 1983. This is simply not the law. *See Brault v. Town of Milton*, 527 F.2d 730, 738–40 (2d Cir.1975) (en banc); *Tucker v. Maher*, 497 F.2d 1309, 1314–15 (2d Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974); *Laverne v. Corning*, 316 F.Supp. 629, 635–36 (S.D.N.Y.1970); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 231–32, 90 S.Ct. 1598, 1641–42, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring in part and dissenting in part). The en banc Second Circuit panel in *Brault* expressly noted that while the

> requirements for maintaining a common law malicious prosecution suit, time-honored though they are, do not bind us in determining whether the plaintiffs have stated a claim for violation of their Fourteenth Amendment rights, ... the experience of the common law is nonetheless a valuable source of instruction in arriving

at minimum standards for imposition of liability based essentially on tortious conduct, whether or not it be labelled as a violation of a "constitutional" or some other right.

527 F.2d at 740. Similarly, the *Tucker* court reasoned that

> while normally the requirement of ulterior purpose or improper motive is not necessary to establish a § 1983 violation, ... "[w]hen an essential element of the wrong itself under well established principles of tort law includes the demonstration of an improper motive as in malicious prosecution, ... then such principle becomes a part of sec. 1983."

*Tucker v. Maher*, 497 F.2d at 1315 (quoting *Whirl v. Kern*, 407 F.2d 781, 787–88 (5th Cir.), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969)). Of course, the malice that need be proven " 'does not necessarily involve spite, hatred, malevolence, or a corrupt design; it is sufficiently established by showing that the baseless suit was instituted from any improper and wrongful motive.' " *Brault v. Town of Milton*, 527 F.2d at 739 (quoting *Sparrow v. Vermont Savings Bank*, 95 Vt. 29, 33, 112 A. 205, 207 (1921)). Here, there is simply no evidence in the record of any improper motive on the part of defendant Endee in his decision to file criminal informations.

Plaintiff erroneously contends that, to establish malice "[i]n the legal sense, it is sufficient to establish only that defendant acted without probable cause." (Plaintiff's post-trial brief at 14). While the absence of probable cause does bear on the malice issue, the two remain independent elements of the malicious prosecution action. *Martin v. City of Albany*, 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306 (1977); *see also Brault v. Town of Milton*, 527 F.2d at 739–40 n. 6. Only where probable cause to initiate a criminal proceeding is

---

17. Indeed, plaintiff appears to operate under a misconception as to where such a burden properly lies. In his post-trial brief, plaintiff asserts that "the limited evidentiary support that defendant introduced at trial ... fails utterly to establish any probable cause for filing the charge[s]...." (Brief at p. 38). The onus is not upon defendant to prove he had probable cause; rather, plaintiff must establish its absence.

"so totally lacking" may malice reasonably be inferred. 42 N.Y.2d at 17, 396 N.Y.S.2d at 615, 364 N.E.2d at 1307. Because this Court already has concluded that probable cause did in fact exist, no such inference of malice properly may be drawn.

Plaintiff also raises allegations of animosity on the part of Judge McWhorter and Trooper Endee toward Richard Hickland. Nowhere, however, are these claims fairly established by the testimony. Nor is there to be found proof of any causal link between such purported animosity and the filing of charges. In short, plaintiff has not carried his burden of establishing by a preponderance of the evidence that any of Trooper Endee's actions were maliciously motivated.

Finally, at least with respect to two of the three informations, plaintiff has failed to establish the third element of a malicious prosecution claim, namely, a termination of the criminal proceedings in plaintiff's favor. It is well settled that this element of the state tort of malicious prosecution claim is equally applicable to § 1983 cases. *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). While plaintiff's acquittal by a jury on the criminal nuisance charge contained in the December 19 information does constitute a favorable termination, it is clear that the dismissal in the interest of justice of the remaining two informations does not. " '[O]nly when [the] * * * final disposition is such as to indicate * * * innocence' " is there a favorable termination. *Hollender v. Trump Village Cooperative Inc.,* 58 N.Y.2d 420, 461 N.Y.S.2d 765, 768, 448 N.E.2d 432, 435 (1983) (quoting Restatement (Second) of Torts § 660 comment a). "If the dismissal is not a matter of right or on the merits, but is only ' * * * as a matter of discretion or favor * *,' [sic] no claim for malicious prosecution may be based upon it." *Dorak v. County of Nassau,* 329 F.Supp. 497, 503 (E.D.N.Y.1970) (quoting *Reit v. Meyer,* 160 A.D. 752, 146 N.Y.S. 75, 79 (1st Dep't 1914)), *aff'd,* 445 F.2d 1023 (2d Cir.1971). Moreover, dis-missals in the interest of justice pursuant to section 170.40 of the New York Criminal Procedure Law have been construed as *not* reflecting any disposition on the merits. *See People v. Clayton,* 41 A.D.2d 204, 206, 342 N.Y.S.2d 106, 109 (2d Dep't 1973); *People v. Cohen,* 112 Misc.2d 377, 447 N.Y.S.2d 90, 92 (N.Y.Crim.Ct.1981); *People v. Eubanks,* 108 Misc.2d 108, 436 N.Y.S.2d 953, 956 (N.Y.Crim.Ct.1981). Here, in requesting dismissal, the District Attorney expressly noted that "the people believe and urge at this time that all of the arrests in each of the various charges, were properly made and were of proper legal form and substance, but that notwithstanding such facts, the interest of the People of the State of New York would best be served by dismissing the two remaining charges in the interest of justice." (Plaintiff's ex. 78, ¶ 4).

Finally, the burden is on the plaintiff to present evidence of the circumstances under which the criminal proceeding was terminated. *Russo v. State of New York,* 672 F.2d 1014, 1020 (2d Cir.1982). Here, plaintiff has not even alleged a favorable termination and no evidence has been offered suggesting the dismissal was based on the innocence of the plaintiff. Absent proof of a favorable termination, plaintiff has failed to make out his § 1983 claim with respect to these two informations.

### B. False Arrest

In addition to the malicious prosecution claim addressed above, plaintiff's complaint also includes claims predicated on a theory of constitutional false arrest. These claims too must fail.

Ostensibly, the constitutional deprivation asserted by plaintiff with respect to his false arrest claim is predicated upon both his fourth amendment right to be free from any unreasonable seizure and his fourteenth amendment right not to be deprived of liberty without due process of law. It is important to note at the outset that Endee's arrest of Richard Hickland was effected pursuant to a facially valid arrest warrant. Richard Hickland, thus, was af-

forded the full constitutional protections to which he was entitled.

The analysis of the Supreme Court in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) is determinative of the outcome here. The plaintiff in *Baker* instituted a § 1983 action asserting a violation of his fourteenth amendment rights based on a theory of false arrest/imprisonment. Like Richard Hickland, the plaintiff in *Baker* had been arrested pursuant to a facially valid arrest warrant. The arrest and detention subsequently proved to have been erroneous. In rejecting any claim of a constitutional deprivation, the Court noted:

> Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution. Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment....
>
> Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law.

443 U.S. at 144–45, 99 S.Ct. at 2694–95 (footnote omitted).

In the present case, Trooper Endee effected the arrest of Richard Hickland only after first obtaining a warrant issued upon a probable cause finding by the town justice. The constitutional safeguard against unfounded invasions of liberty was satisfied, therefore, by having the issue of prob-able cause decided by a neutral and detached magistrate. *See Gerstein v. Pugh,* 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975). Here, the actions of the town justice serve to insulate Trooper Endee from liability for any action stemming from what is now claimed to have been an erroneous arrest.[18]

Of course, the situation would be entirely different had plaintiff adduced evidence that Endee swore falsely to the information upon which the magistrate based his finding of probable cause. Here, however, the record contains no such evidence. Because plaintiff was afforded the constitutional protection of having a neutral and detached magistrate pass upon the question of probable cause, no liability properly may attach to the actions of Trooper Endee.

## V

For all of the foregoing reasons, this Court concludes that plaintiff has not established a violation of his constitutional rights. Accordingly, entry of judgment in favor of defendant R.H. Endee, Jr. hereby is directed. The foregoing constitutes this Court's findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

It is so Ordered.

---

18. There is no claim that the town justice himself is liable for the false arrest of plaintiff. Nor would such a claim be maintainable under the well-established doctrine of judicial immunity. "[J]udges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 734–35, 100 S.Ct. 1967, 1975–76, 64 L.Ed.2d 641 (1980); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). What plaintiff does argue, however, is that those conspiring with immune officials are not entitled to assert a vicarious immunity. Citing *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), plaintiff contends that Trooper Endee may be held liable for the acts of his immune co-conspirator, Judge McWhorter. While as a general proposition this may be true, in the present case plaintiff has failed to sustain his burden of establishing any unlawful conspiracy between Trooper Endee and Judge McWhorter.